SAMUEL MEADOW *v.* WINCHESTER REPEATING ARMS COMPANY

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued November 5, 1947—decided January 9, 1948

*George E. Beers* and *Edward S. Snyder*, for the appellant (plaintiff).

*Joseph V. Fay, Jr.*, with whom, on the brief, was *Harrison D. Schofield*, for the appellee (defendant).

DICKENSON, J. The plaintiff appealed to the Superior Court from a finding and award of the compensation commissioner denying his claim for compensation and filed a separate appeal from the refusal of the commissioner to open the award. In the record it appears that on a stipulation of the parties and by consent of court the appeals were consolidated, and the court affirmed the award of the

commissioner and his denial of the motion to open. The plaintiff appealed to this court. In the interest of accuracy and simplicity of procedure, we point out that two appeals were unnecessary. The motion to open the award was filed on the same day as the appeal from the award. Where such a motion is made by a party who intends to appeal from the award if the motion is denied, he may postpone the filing of the appeal until the motion is determined; *Galway* v. *Doody Steel Erecting Co.*, 103 Conn. 431, 433, 130 A. 705; or, if he makes the motion after he has filed an appeal from the award and while it is pending, he may include the denial of the motion in his reasons of appeal as originally filed or amend them to include it. *First National Bank* v. *Ferguson*, 129 Conn. 374, 376, 28 A. 2d 87. In fact, no appeal lies from the denial of a motion to open an award made before the award has become final. *Osterlund* v. *State,* 129 Conn. 591, 594, 30 A. 2d 393. If thereafter such a motion is made, the procedural situation is like that presented by a petition for a new trial in an ordinary court case, and an appeal lies from its denial. *Wysocki* v. *Bradley & Hubbard Co.,* 113 Conn. 170, 177, 154 A. 431; *State* v. *Kemp,* 124 Conn. 639, 644, 1 A. 2d 761. As the consolidation of the appeals has the effect of merging the claimed error in the second into the first, we have decided to consider the issues presented by the denial of the motion.

The plaintiff's sole claim before this court is that he was entitled to a new hearing before the commissioner because of newly discovered evidence, for he concedes that the award was based on conflicting evidence. The defendant claims that the evidence offered in support of a new trial was cumulative, was

not newly discovered and was not likely to change the result.

At the original hearing the commissioner found that there was a voluntary agreement for compensation for an injury described as "pain lower back" occurring on October 5, 1944; that in the agreement weekly payments were to be made during a period of total incapacity; and that on January 3, 1945, notice of discontinuance of such payments was given stating that they ceased on October 30, 1944, as the plaintiff had then returned to work. The commissioner further found that the plaintiff continued to work for the defendant until August 21, 1945, when he was laid off because of lack of work resulting from the cancellation of war contracts; that he claimed to have been totally disabled since that time; that he was examined or treated by the defendant's physician, Dr. Vestal, by his family physician, Dr. Falsey, and by two other doctors, one of whom was Dr. Poverman; and that Drs. Vestal and Poverman testified at the hearing. The commissioner further found that following the injury the plaintiff reported to Dr. Vestal on six occasions, October 5 to November 2, 1944, inclusive, and did not report again until July 10, 1945, when he complained of pain in the center of his back from lifting slides. The commissioner recites in his finding that it was the opinion of Dr. Poverman, who first saw the plaintiff on February 14, 1946, that he was totally incapacitated as a result of his injury and required further medical treatment, and that in the opinion of Dr. Vestal the plaintiff had entirely recovered from the effects of the accidental injury but suffered from an enlarged heart, high blood pressure, tremors of the fingers and arthritis of the spine, and that there was no causal connection between the

plaintiff's present physical condition and the accidental injury of October 5, 1944. These statements are recitals of evidence and have no proper place in the finding; *Mages* v. *Alfred Brown, Inc.*, 123 Conn. 188, 191, 193 A. 780; but they summarize the testimony before the commissioner at the original hearing and afford a good basis for considering the issue before us. From this evidence the commissioner concluded that on August 21, 1945, when the plaintiff ceased work, he had recovered from the effects of his injury and that his claimed disability was not traceable to his injury but was due to an unrelated physical condition.

On the motion to reopen the finding and award, plaintiff's counsel stated, in substance, that he did not offer new witnesses on the ground that they were not available at the original hearing, that he presumed they were, but that he had not supposed that the tremors of the fingers, the arthritis or the heart condition would be an issue in the original hearing. He then offered the testimony of three doctors for the purpose of proving that the plaintiff did not suffer disability from these conditions.

Generally, the action of a compensation commissioner upon a motion to open his award for the purpose of hearing further evidence is like that of a court upon a motion for a new trial. *Wysocki* v. *Bradley & Hubbard Co.*, supra. In *Kearns* v. *Torrington*, 119 Conn. 522, 526, 177 A. 725, we reviewed our decisions and said that we had not been entirely consistent in our statements of the principles which should guide a commissioner in the exercise of his discretion in acting upon a motion to open an award upon the ground of newly discovered evidence, and we stated (p. 529) the principles to be as follows: "A party to a compensation case is not entitled to try

his case piecemeal, to present a part of the evidence reasonably available to him and then, if he loses, have a rehearing to offer testimony he might as well have presented at the original hearing. He must be assumed to be reasonably familiar with his rights and with the requisites of proof necessary to establish his claim; and to permit him intentionally to withhold proof, or to shut his eyes to the reasonably obvious sources of proof open to him, would be fair neither to the commissioner and the court nor to the defendant. Where an issue has been fairly litigated, with proof offered by both parties, a claimant should not be entitled to a further hearing to introduce cumulative evidence, unless its character or force be such that it would be likely to produce a different result. *Gonirenki* v. *American Steel & Wire Co.* [106 Conn. 1, 11, 137 Atl. 26]. On the other hand, mere inadvertence on his part, mere negligence, without intentional withholding of evidence, particularly where there is no more than technical prejudice to the adverse party, should not necessarily debar him of his rights, and despite these circumstances a commissioner in the exercise of his discretion might be justified in opening an award. No definite rule can be formulated, but the policy that litigation should be brought to as speedy an end as is reasonably compatible with justice to the parties, prejudice or lack of it to the opposing party, the conduct of the party seeking to open the award, particularly with regard to any reason he may have for not having produced the evidence at the original hearing, the nature of the testimony and its probable effect upon the conclusion reached, and the other relevant circumstances must all be considered. The matter is one which must lie very largely within the discretion of the commissioner." "In the absence of

other controlling circumstances, the ultimate question for the determination of the compensation commissioner is whether it appears likely that an injustice has been done, and upon a rehearing a different result would probably be reached." *Olivieri* v. *Bridgeport,* 126 Conn, 265, 270, 10 A. 2d 770; *Osterlund* v. *State,* 129 Conn. 591, 595, 30 A. 2d 393.

The evidence offered can well be said not to be within the classification of cumulative evidence or such as to charge the plaintiff with laches in failing to produce it at the original hearing. He appeared at the original hearing prepared to show an accidental injury resulting in incapacity. He was met with medical testimony that his incapacity was caused by an arthritic condition. In the motion to reopen he sought to show that he had no arthritis, a fact of a different character. See *Link* v. *State,* 114 Conn. 102, 107, 157 A. 867. From the fact that there had been a voluntary agreement for compensation, the plaintiff might reasonably have assumed that the accidental injury was not questioned and that the issue was whether incapacity had persisted as a result of it. He was met with the testimony of the defendant's physician that, in substance, the arthritic condition was the cause of both his original and his present incapacity.

This is not, however, wholly determinative of the plaintiff's right to have his case reopened. The question remains whether the new evidence offered was such as probably would have changed the result, and the burden was upon the plaintiff to establish this. *Jobbes* v. *State,* 125 Conn. 286, 289, 5 A. 2d 21; *State* v. *Goldberger,* 118 Conn. 444, 457, 173 A. 216. The problem presented to the commissioner was whether the new evidence was sufficient to show that an injustice had been done by his award and

that a different result would probably be reached on a new hearing. There is no definite finding that the plaintiff was in fact incapacitated at the time of the original hearing. The commissioner refers in his finding not to a disability but to a "claimed" disability of the plaintiff and suggests that if he has this it is due rather to a physical condition entirely unrelated to his injury. The commissioner was not limited to medical testimony in determining whether or not the plaintiff was incapacitated. He had before him the evidence that after a short period of incapacity for work in October of 1944 the plaintiff returned to work and continued to work until August 21 of the following year and stopped work only when laid off for lack of it in the defendant's factory. Further, there was evidence from which the commissioner was justified in concluding that if the plaintiff indeed suffered from a lame back it was not caused by the accidental injury of October 5 but by a strain caused at a later date. Dr. Vestal testified at the original hearing that the plaintiff first came to him on October 5, 1944, complaining of pain in his lower back while lifting a box of slides and that he came to the hospital again on July 10, 1945, and said that he was lifting a box of slides that day and thought this caused the pain in his back. The physician further testified as to the plaintiff's physical condition as follows: "He is a man of 60. He has extensive arthritis. His back is almost stiff. He can't bend it. He hasn't bent it ever since I saw him. When he starts to bend over he bends from the hips. He doesn't bend his back and he has an enlarged heart. And he is working along and gets a pain in his back. He lays off and gets treated for it. It gets better and he comes back to work. He is working along and in

July he has another pain in his back, not enough to lay him up but some."

To refute this testimony the plaintiff offered that of four physicians who had not testified at the original hearing. Of these, Dr. Falsey testified that he was the plaintiff's family physician, had attended the plaintiff on six occasions, October 5 to October 28, 1944, inclusive, and had then referred him back to the defendant's hospital; that he again treated the plaintiff on December 10, 1944, for a complaint of pain in the back and later treated him in 1945 and 1946. He said he had never treated him for arthritis. He further testified that the plaintiff told him that he received his injury on October 5, 1944, when he lost his balance while lifting a heavy box and fell, striking his back. He attributed the plaintiff's condition to this injury. Dr. Wheatley, a radiologist, examined an x-ray of the plaintiff's back taken February 14, 1946, and testified that he saw nothing therein that was definitely an arthritic condition; that he found a spurring formation on the vertebrae that could exist "without necessarily [involving] arthritic evidence." Dr. Goldberg testified that he examined the plaintiff on September 18, 1946, and found his heart and cardiovascular system within the range of normal for his age. Dr. Marinoff testified that he examined the plaintiff in February, 1946, that he complained of a low backache which he said was caused when he fell and struck his back while lifting a box in October, 1944, and that he, Dr. Marinoff, could find no other cause for the backache. The commissioner had, on the one hand, the positive statement of Dr. Vestal that the plaintiff's trouble was arthritis, which incapacitated him from time to time, and, on the other hand, the more or less nega-

tive testimony of the absence of arthritis and that the plaintiff was suffering from an injury.

The commissioner was met with a situation where the evidence on the original hearing was contradictory and that offered on the motion to reopen added little to it. We cannot say that the commissioner's decision was unreasonable or was an abuse of his discretion; *Wysocki* v. *Bradley & Hubbard Co.*, 113 Conn. 170, 177, 154 A. 431; and it was confirmed by the trial court. *Driscoll* v. *Jewell Belting Co.*, 96 Conn. 295, 300, 114 A. 109.

There is no error.

In this opinion the other judges concurred.