RONALD TUTSKY *v.* YMCA OF GREENWICH ET AL.
(9934)

DUPONT, C. J., FOTI and LANDAU, Js.

Argued May 7—decision released August 11, 1992

*Lawrence E. Larson,* for the appellant (plaintiff).

*Thomas A. Mulligan,* with whom, on the brief, was *Thomas J. Hickey,* for the appellees (defendants).

FOTI, J. The plaintiff appeals from the January 17, 1991, decision of the workers' compensation review division, dismissing his appeal from the commissioner's July 31, 1989, denial of a "motion to reopen"[1] compensation proceedings. The plaintiff claims that the review division improperly (1) failed to find that an insurer that is not paying the claimant temporary total disability benefits is obligated to disclose to the commissioner information from the claimant's treating physician indicating that the claimant is unable to work, (2) failed to find that the commissioner should have granted the claimant's motion to open the compensation proceedings upon receipt of information from the claimant's treating physician that the claimant is unable to work, and (3) found that certain correspondence between the insurer and the treating physician was immaterial to the motion to open the proceedings. We affirm the decision of the compensation review division.

The following facts are pertinent to this appeal. The plaintiff injured his back on February 27, 1980, while working at the YMCA of Greenwich. The plaintiff, the YMCA, and its insurer, Royal Insurance Company (Royal), entered a voluntary agreement acknowledging compensability on April 29, 1981. The agreement was approved by the commissioner, and the plaintiff began receiving temporary total disability benefits. On March 17, 1980, shortly after the work related accident, the plaintiff suffered a back injury that was not work

---

[1] The plaintiff moved to "*reopen* and modify" the compensation proceedings. Unless a decision has been opened previously, however, the appropriate term is a motion to *open*. See *National Iron Bank* v. *Gelormino,* 28 Conn. App. 7, 8 n.1, 609 A.2d 666 (1992). We will therefore treat the motion as a motion to open.

related when he slipped on some waxed stairs at the Greenwich YMCA, where he also lived. He later filed a common law action against the YMCA.

As part of Royal's ongoing investigation of the compensation claim, the plaintiff was examined on April 15, 1983, by Arthur Brovender, an orthopedic surgeon. During the examination, the plaintiff allegedly suffered additional back injury, for which he later brought a malpractice action against Brovender.

On May 14, 1984, Royal requested that the plaintiff submit to a second independent medical examination. The plaintiff agreed to undergo the exam, but advised Royal that, pursuant to General Statutes § 31-305, he wanted his treating physician, James D. Prokop, to be present. While arrangements were being made for the exam, Royal stopped paying benefits and filed a "Notice to Compensation Commissioner and Employee of Intention to Discontinue Payments" (form 36). The reason for termination stated on the form 36 was the plaintiff's refusal to undergo an independent medical examination. The commissioner issued a conditional form 36 approval and suspended benefits on July 9, 1984. The plaintiff has received no further temporary total disability benefits since July 3, 1984. The exam was eventually performed on August 1, 1984.

The plaintiff contested the form 36 on July 13, 1984. Thereafter, the commissioner held a series of seven hearings between December 1984 and August 1986, at which the plaintiff submitted medical information from both his treating physician and chiropractor. On December 26, 1986, the commissioner issued a finding and dismissal of the plaintiff's claim. The decision was based on the commissioner's findings that the plaintiff's March 1980 and April 1983 injuries were intervening causes of his disability, and that the plaintiff had failed to relate his current condition causally to the compensable event of February 27, 1980.

The plaintiff appealed the commissioner's dismissal, the compensation review division affirmed the commissioner, and this court affirmed the review division. *Tutsky* v. *YMCA*, 6 Conn. Workers' Comp. Rev. Op. 167 (1989), aff'd, 21 Conn. App. 806, 572 A.2d 391, cert. denied, 214 Conn. 809, 573 A.2d 321 (1990). Following the dismissal, the plaintiff made three motions to open his case, in order to introduce additional medical information. The first two motions were denied by the commissioner, and, after each denial, the plaintiff appealed to the review division, which affirmed the denials. In his third motion, the plaintiff sought to introduce some newly discovered correspondence consisting of four letters between Vincent Afasano of Royal and Prokop, the plaintiff's physician, which he claimed were material to his case. The letters were discovered by the plaintiff's attorney during a review of Prokop's records, preparatory to trial of the malpractice action against Brovender. This third motion was denied after the commissioner determined that the four letters were not material to the claim, in that they did not causally connect the claimant's condition to the February 1980 injury. On January 17, 1991, the compensation review division dismissed the plaintiff's appeal from the denial of this third motion. The plaintiff then filed the present appeal.

The plaintiff first claims that the review division improperly found that Royal did not have a duty to disclose to the commissioner the four letters between Royal and Prokop at the time this correspondence was exchanged. He bases this claim on General Statutes (Rev. to 1987) § 31-290b, which was in effect at that time[2] and which provided: "Any person who knowingly makes a false statement or representation or fails to disclose a material fact in order to obtain, increase, pre-

---

[2] The statute was repealed in 1990. Public Acts 1990, No. 90-244, § 2.

vent or decrease any benefit or payment under this chapter shall be guilty of a class A misdemeanor." The thrust of the plaintiff's claim is that these letters contained "material facts" relevant to his compensation claim, and that because Royal failed to disclose them when they were written, the commissioner, exercising his equitable powers, should have permitted their introduction when they were later discovered.

As we will discuss more fully below, the commissioner reviewed the four letters between Royal and Prokop, and found that, although they refer to the plaintiff's injury, the letters shed no light on the critical issue affecting liability in this case: whether the plaintiff's current condition is causally related to his February 1980 work related accident. The commissioner concluded that none of the letters specifically addressed the issue. While this evidence may have been new, in that the plaintiff did not have these particular letters in hand at the time his case was originally before the commissioner, the letters contained no new information about the plaintiff's condition; they merely reiterated the medical data already submitted and would not have affected or materially changed the commissioner's decision. General Statutes § 31-290b addresses only the consequences of a failure to disclose "material" facts. Since the commissioner found that the information in these letters was not "material," Royal's failure to disclose them could have no bearing on the outcome of the plaintiff's case.

The plaintiff's second and third claims challenge the review division's affirmance of the commissioner's determination that the plaintiff was not entitled to an opening of his compensation claim because of the newly discovered correspondence between Royal and Prokop. The commissioner held that this evidence was cumulative and not likely to change the outcome of the case, and the review division affirmed this decision. We agree.

A workers' compensation award is, by nature, an interlocutory decree. *Fair* v. *Hartford Rubber Works Co.,* 95 Conn. 350, 356, 111 A. 193 (1920). As such, it is "always limited to a claimant's current condition and always subject to later modification upon the request of either party during the entire period of compensation if the complainant's condition changes." *Besade* v. *Interstate Security Services,* 212 Conn. 441, 444–45, 562 A.2d 1086 (1989). General Statutes § 31-315,[3] which provides statutory authority for opening an award when the disability changes, also permits modification when *"changed conditions of fact have arisen* which necessitate a change of such agreement or award in order to properly carry out the spirit of [the workers' compensation laws]." (Emphasis added.) See *Adzima* v. *UAC/Norden Division,* 177 Conn. 107, 116, 411 A.2d 924 (1979).

While a workers' compensation award may, under the appropriate circumstances, be opened, the decision to do so and to modify the award is within the sound discretion of the commissioner. *Lucarelli* v. *Earle C. Dodds, Inc.,* 121 Conn. 640, 645, 186 A. 641 (1936). The commissioner must "deny the motion [to open] unless further hearing would produce evidence of such char-

---

[3] General Statutes § 31-315 provides: "Any award of, or voluntary agreement concerning, compensation made under the provisions of this chapter shall be subject to modification, upon the request of either party and in accordance with the procedure for original determinations, whenever it appears to the compensation commissioner, after notice and hearing thereon, that the incapacity of an injured employee has increased, decreased or ceased, or that the measure of dependence on account of which the compensation is paid has changed, or that changed conditions of fact have arisen which necessitate a change of such agreement or award in order properly to carry out the spirit of this chapter. The commissioner shall also have the same power to open and modify an award as any court of the state has to open and modify a judgment of such court. The compensation commissioner shall retain jurisdiction over claims for compensation, awards and voluntary agreements, for any proper action thereon, during the whole compensation period applicable to the injury in question."

acter and force that it would be likely to cause a different result." *Metall* v. *Aluminum Co. of America,* 154 Conn. 48, 53, 221 A.2d 260 (1966); accord *Meadow* v. *Winchester Repeating Arms Co.,* 134 Conn. 269, 273–74, 57 A.2d 138 (1948); *Olivieri* v. *Bridgeport,* 126 Conn. 265, 270, 10 A.2d 770 (1940). In *Meadow* v. *Winchester Repeating Arms Co.,* supra, the court stated that " '[a] party to a compensation case is not entitled to try his case piecemeal, to present a part of the evidence reasonably available to him and then, if he loses, have a rehearing to offer testimony he might as well have presented at the original hearing. . . . Where an issue has been fairly litigated, with proof offered by both parties, a claimant should not be entitled to a further hearing to introduce cumulative evidence, unless its character or force be such that it would be likely to produce a different result. . . .' " (Citation omitted.)

The test by which the commissioner determines whether to open a claim is "whether the new evidence [is] sufficient to show that an injustice had been done by his award and that a different result would probably be reached on a new hearing." *Meadow* v. *Winchester Repeating Arms Co.,* supra, 275–76. As our Supreme Court pointed out in *Meadow,* "the action of a compensation commissioner upon a motion to open his award for the purpose of hearing further evidence is like that of a court upon a motion for a new trial." Id., 273. In *Besade* v. *Interstate Security Services,* supra, 452, the court specifically held that a claimant seeking to open a workers' compensation proceeding must establish the following by a preponderance of the evidence: "(1) the proffered evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence; (2) it would be material on a new trial; (3) it is not merely cumulative; and (4) it is likely to produce a different result in a new trial." Just as the decision whether to grant a new trial

rests within the discretion of the trial court; *Asherman* v. *State*, 202 Conn. 429, 434, 521 A.2d 578 (1987); the decision whether to open a compensation hearing and to admit additional evidence rests "very largely within the discretion of the commissioner." *Meadow* v. *Winchester Repeating Arms Co.*, supra, 274. Importantly, it is the claimant who bears the burden of showing that there is new evidence that is likely to produce a "different result." *Besade* v. *Interstate Security Services*, supra, 453; *Metall* v. *Aluminum Co. of America*, supra; *Meadow* v. *Winchester Repeating Arms Co.*, supra, 275.

In the present case, the plaintiff did not meet this burden. The commissioner specifically found that the additional evidence that the plaintiff sought to introduce in connection with the motion to open the award did not establish the requisite causal connection between his current condition and the February 1980 work related injury. "This conclusion, that a causal connection was not proven, is essentially one of fact to be determined in view of all of the relevant circumstances, and it must stand unless it is one which could not reasonably or logically be reached on the subordinate facts. It must be tested by the subordinate facts and must stand unless it resulted from an incorrect application of law to them or because of an inference illogically or unreasonably drawn from them." *Metall* v. *Aluminum Co. of America*, supra, 52; *Fair* v. *People's Savings Bank*, 207 Conn. 535, 539, 542 A.2d 1118 (1988).

In this case, the commissioner's finding was not unreasonable, nor was it unsupported by subordinate facts. Until the time the plaintiff filed the third motion to open his claim, he had failed repeatedly to establish a causal connection between the February 1980 accident and his existing disability. Between 1984 and 1986, a series of seven evidentiary hearings were held during which the plaintiff had ample opportunity to make this necessary connection. "To be entitled to work[ers']

compensation, the plaintiff has the burden of proving that his injuries were sustained in the course of his employment and that they arose out of that employment." *Dombach* v. *Olkon Corporation,* 163 Conn. 216, 221, 302 A.2d 270 (1972). In his December 26, 1986 finding and dismissal, which was later affirmed by the review division and this court, the commissioner plainly states that none of the medical evidence made available on the plaintiff's behalf satisfied the requisite "quantum of proof," in that none of the evidence "causally relate[d] the claimant's problems at the time of these hearings to a compensable event based upon reasonable medical probability." Thus, the primary basis for this initial dismissal was the plaintiff's failure to establish the requisite causal nexus.

Nor was this nexus established in the plaintiff's first two motions to open the proceedings. The first motion to open was denied because the commissioner concluded that the medical information the plaintiff sought to introduce "was or should have been available at the time of the Formal Hearings, since the hearings revolved about the respondent's claims, among others, that the claimant's disability was attributable to incidents other than the compensable accident of February 27, 1980. . . ."

Similarly, the plaintiff's second motion to open was denied on the basis that the three additional medical reports he sought to introduce "contain[ed] findings which verif[ied] a back injury, however none of them distinguish[ed] the reason for the claimant's disability as being attributable to his concededly compensable injury of February 27, 1980, a subsequent alleged injury on April 15, 1983 during the course of an independent medical examination by the insurance company's physician, or a fall down stairs on March 17, 1980."

The plaintiff's repeated inability to link his condition to the February 1980 accident, as well as the content of the newly discovered letters themselves, fully support the commissioner's denial of the third motion to open the compensation proceedings. As we noted earlier, the commissioner examined the letters between Royal and Prokop and found that, while referring to the plaintiff's injury, none of the letters squarely resolved the causality question. The letters merely restated the medical data already before the commission and would not affect or materially change the decision. *Lucarelli* v. *Earle C. Dodds, Inc.*, supra. As such, they presented no changed "conditions of fact" that necessitated opening the claim. The compensation review division agreed, stating that it was "unlikely the evidence claimant proffers would change the ultimate result as it is not material to the causation of claimant's disability."

The commissioner's determination that the proffered letters were cumulative and not material to the causality question, being one of fact, was committed to his discretion. *Fair* v. *People's Savings Bank,* supra, 541 (the question whether an injury arose out of the employment is factual in nature and is committed to the commissioner's discretion); see also *Besade* v. *Interstate Security Services,* supra, 448; *Adzima* v. *UAC/Norden Division,* supra, 117–18. "[T]he discretion of a commissioner in a matter of this kind should not be lightly disturbed." *Furlani* v. *Avery,* 112 Conn. 333, 339, 152 A. 158 (1930).

Where the decision of the commissioner was neither arbitrary nor capricious nor an abuse of discretion, the review division was bound by the commissioner's conclusion. *Besade* v. *Interstate Security Services,* supra; *Fair* v. *People's Savings Bank,* supra. The review division's "hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is obliged

to hear the appeal on the record and not 'retry the facts.' . . . The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citations omitted.) *Fair* v. *People's Savings Bank,* supra, 538–39.

We have reviewed the record and the proffered letters and find nothing to warrant disturbing the commissioner's factual conclusion or the review division's affirmance. The August 18 and September 4, 1987 letters from Royal to Prokop requesting medical information about the plaintiff do refer briefly to the February 27, 1980 work related injury. But neither these letters nor Prokop's August 26 and September 9, 1987 replies address or resolve the crucial issue affecting liability: whether the plaintiff's current condition is causally related to that particular injury.

Finally, the plaintiff urges that he has been denied procedural due process by the commissioner's failure to hold a hearing on his motion to open.[4] In his brief, he states that denial of the motion "without the statutory notice and hearing is further evidence of the failure of the commissioner to give the plaintiff due process and to deal with this case equitably, in a humanitarian way, as intended by the legislation. The commissioner has abused his discretion in denying this motion and is required to give notice and hearing as required by statute." We find this due process argument to be without merit.

The plaintiff contends that because the correspondence between Royal and Prokop was "material," the

---

[4] It is noteworthy that the plaintiff merely alluded to this claim in the proceedings below and in his appellate brief. In response to questioning by this court at oral argument, however, the plaintiff pursued this argument more forcefully.

commission was obligated, under General Statutes § 31-315, to provide him with notice and a hearing *before* ruling on the motion to open. In his brief, he states that General Statutes § 31-315 provides "for notice and hearing *on any application under this section.*" (Emphasis added.) The plaintiff has misread the statute.

Section 31-315 provides for modification of an award "whenever it appears to the compensation commissioner, after notice and hearing thereon, that the incapacity of an injured employee has increased, decreased or ceased, or that the measure of dependence on account of which the compensation is paid has changed, or that changed conditions of fact have arisen which necessitate a change of such agreement or award . . . ." These notice and hearing requirements, however, which are prerequisites to the commissioner's modification of an award, come into play only *after* a threshold determination has been made that "conditions of fact have arisen which necessitate a change"; in other words, *after* the commissioner has determined that the new evidence is "material" and warrants opening the claim. *Besade* v. *Interstate Security Services,* supra, 452; *Meadow* v. *Winchester Repeating Arms Co.,* supra.

In this case, the commissioner, in his discretion, determined that no new conditions of fact had arisen that necessitated a change; the proffered evidence was "merely cumulative." There was, therefore, no reason to proceed to the "notice and hearing" stage.

The decision is affirmed.

In this opinion the other judges concurred.