MARK HAMMOND *v.* CITY OF BRIDGEPORT ET AL.
(AC 33491)

DiPentima, C. J., and Beach and Foti, Js.

Argued May 30—officially released December 18, 2012

*Frank A. May,* with whom, on the brief, was *Bridget M. Ciarlo,* for the appellants (defendants).

*Richard H. Greene,* for the appellee (plaintiff).

*Opinion*

BEACH, J. The defendants, the city of Bridgeport (city) and its insurer Berkley Administrators of Connecticut, Inc., appeal from the finding and award of the workers' compensation commissioner for the fourth district (commissioner) rendered in favor of the plaintiff, Mark Hammond, on his discriminatory discharge claim. On appeal, the defendants claim that the commissioner erred in (1) finding that the city discriminated against the plaintiff, (2) denying their "motion to reopen award, consider newly discovered evidence, reconsider/reissue finding and award and for a new trial/ formal" with attachments, (3) denying proposed corrections in their motion to correct the finding and award, (4) deciding issues and ordering damages beyond the scope of the issue submitted and agreed to by the parties and (5) interpreting and applying alleged rights under a collective bargaining agreement. We affirm the commissioner's decision.

Following a hearing on July 7, 2010, at which the plaintiff was the only witness to testify, the commissioner issued his decision on April 20, 2011, in which he set forth the following relevant facts.[1] The plaintiff regularly worked for the city's roadway division in the public works department. While working in the sanitation division of the city's public works department, the plaintiff injured his right shoulder on December 10, 2007. He was temporarily totally disabled as of February 28, 2008, the date of the first of three surgeries that were paid for by the workers' compensation policy of the city, and temporarily partially disabled as of April 15, 2009. The city sent the plaintiff a letter dated February 23, 2009, in which Jodie L. Paul, the labor relations officer for the city, informed the plaintiff: "Our records indicate that you have been on leave from your position as a Maintainer I (Grade I) with the [c]ity . . . for over twelve (12) months, specifically since December 10, 2007. Please know that your collective bargaining agreement contains a twelve (12) month leave limitation. If you are presently unable or unwilling to return to the position you held prior to the commencement of your leave on a full-time basis, you will be deemed to have resigned from your position effective Friday, March 6, 2009." The plaintiff was not, however, on a leave of absence from December 10, 2007, through January 30, 2008. The city did not inform the plaintiff that his leave of absence had been calculated from December 10, 2007, until the city sent him the aforementioned

[1] On May 9, 2011, the commissioner ordered eight corrections to the finding and award issued on April 20, 2011. The facts as set forth in this opinion incorporate those corrections.

In his finding and award issued on April 20, 2011, the commissioner stated that "[t]he [plaintiff] testified to the following:" and set forth paragraphs "a" through "m." Under the heading "WHEREFORE, UPON ALL THE EVIDENCE BEFORE ME, I AM SATISFIED, CONCLUDE AND FIND THAT," the commissioner stated: "The [plaintiff] is credible and persuasive." We interpret the commissioner's finding and award as finding as fact the testimony of the plaintiff set forth therein.

letter dated February 23, 2009. The city's leave of absence policy is contained in article 37 of its collective bargaining agreement with the plaintiff's union, which provides in relevant part: "The department head, with the approval of the [d]irector of [l]abor [r]elations, may grant an employee a leave of absence without pay for a period not to exceed one year, except that a six (6) month hardship extension may be granted with the approval of the [d]irector of [l]abor [r]elations."[2] Paul sent the plaintiff another letter dated April 30, 2009, granting the plaintiff's request for a six month extension of a leave of absence and informing him that the extension would expire on June 12, 2009, and that if he was unable or unwilling to return to his full duty position as of June 15, 2009, he would be deemed to have voluntarily resigned. Paul then sent the plaintiff a letter dated June 15, 2009, to inform him that he was deemed to have voluntarily resigned from his position of "Maintainer I (Grade I)" with the city as a result of the one year leave limitation and six month extension he was granted pursuant to the collective bargaining agreement. The plaintiff received temporary total disability benefits from January 31, 2008, until he was terminated from employment on June 15, 2009.

The commissioner applied a three-pronged test in order to determine whether the city had violated General Statutes § 31-290a (a), which provides: "No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter." The commissioner discussed the burden shifting test, which

---

[2] Apparently, an employee who was absent from work because of a work-related injury, and presumably receiving workers' compensation benefits, was considered administratively to be on a leave of absence without pay.

is stated in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 53–54, 578 A.2d 1054 (1990). "The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Citations omitted; internal quotation marks omitted.) Id.

The commissioner found that the plaintiff met his burden of proving by the preponderance of the evidence a prima facie case of discrimination. The commissioner found that "[the plaintiff] was accused by a supervisor of faking his shoulder injury and, despite being . . . given a light duty assignment in the [r]oadway division until his February 28, 2008 surgery, [he] often performed full duty tasks such as shoveling sand."[3] The commissioner then found that the city satisfied its burden under the second prong by introducing its collective bargaining agreement and the letters from Paul into evidence, because the agreement and letters demonstrated

---

[3] According to the commissioner's findings, the plaintiff "received temporary total disability benefits from January 31, 2008, until he was terminated from employment on June 15, 2009," and was "given a light duty assignment in the [r]oadway division until his February 28, 2008 surgery . . . ." This apparent discrepancy is not explained.

a legitimate, nondiscriminatory reason for the city's actions. As to the third prong under *Ford*, the commissioner found that the plaintiff demonstrated that the city's contention that the termination of employment procedure was uniformly applied to all employees lacked credibility and set forth the following as support for his finding: "The fact that the [c]ity attempted to begin the [twelve] month leave of absence on the day of injury despite the claimant having continued to work for almost three months afterward, and [t]he fact that the [c]ity attempted to apply its neutral [twelve] month termination requirement more than [fourteen] months after it contended the [twelve] month leave of absence began, and [t]he fact that the [c]ity attempted to apply its neutral [six] month extension policy over the next [six] weeks rather than [six] months." Accordingly, the commissioner concluded that the city discriminated against the plaintiff in violation of § 31-290a.[4] The commissioner ordered the city to reinstate the plaintiff to his last full-time position in the roadway division of the department of public works and to pay the plaintiff back wages from the date of termination to the date of the decision. The commissioner further ordered the city to reinstate to the plaintiff all sick pay, vacation pay, pension contributions and pension service from the date of termination to the date of the decision. Finally, the commissioner awarded the plaintiff reasonable attorney's fees to be paid by the city.

On May 4, 2011, the defendants filed a motion to correct the finding and award, in which it proposed sixteen corrections and sixty-four additional findings. On the same date, the defendants also filed a "motion to reopen award, consider newly discovered evidence, reconsider/reissue finding and award and for a new

---

[4] Because the commissioner found a violation of § 31-290a, he found it unnecessary to reach the merits of the plaintiff's claim pursuant to General Statutes § 31-313, which imposes a duty on an employer to provide suitable work to an injured or disabled employee if such work is available.

trial/formal" (motion to open the award and for a new trial). They sought to have the commissioner consider job descriptions for the relevant time period, a physical demand analysis of the maintainer position in the roadway division and a decision dated November 22, 2010, of the state board of mediation and arbitration dismissing the plaintiff's grievance concerning his termination by the city. The commissioner ordered eight corrections and denied the remainder of the defendants' motion to correct. The commissioner also denied in its entirety the defendants' motion to open the award and for a new trial. The defendants have appealed from the commissioner's April 20, 2011 finding and award, the May 9, 2011 ruling denying the defendants' motion to correct and the May 9, 2011 ruling denying the defendants' motion to open the award and for a new trial.[5]

---

[5] Before reaching the merits of the defendants' claims, we must decide whether this appeal is properly before us. Section 31-290a (b) provides for a direct appeal to this court from the commissioner's decision. We asked the parties to submit supplemental briefs on the issue of whether this appeal was taken from a final judgment and thus whether we have subject matter jurisdiction in light of *Szudora* v. *Fairfield*, 214 Conn. 552, 573 A.2d 1 (1990), despite the failure of the commissioner to make specific findings as to damage amounts owed prior to the appeal. Both parties responded that the further proceedings regarding damages will not require the exercise of independent judgment, but rather are ministerial in light of *Szudora*.

"It is axiomatic that appellate review of disputed claims of law and fact ordinarily must await the rendering of a final judgment by the compensation review division. . . . The finality of the decision of the review division is called into question in this case because of the review division's order of a remand for further administrative proceedings. The test that determines whether such a decision is a final judgment turns on the scope of the proceedings on remand: if such further proceedings are merely ministerial, the decision is an appealable final judgment, but if further proceedings will require the exercise of independent judgment or discretion and the taking of additional evidence, the appeal is premature and must be dismissed." (Citations omitted.) Id., 556.

There is a final judgment here because, as the parties agree, all that remains for the commissioner is the ministerial task of calculating damages based on available, undisputed information. That task will require no exercise of discretion on the part of the commissioner.

Additionally, the award of attorney's fees in an amount to be determined does not render the decision on the merits not final for appeal purposes

I

The defendants first claim that the commissioner erred in concluding that the city discriminated against the plaintiff in violation of § 31-290a. We disagree.

We first set forth the standard of review. A claim of employment discrimination brought pursuant to § 31-290a is evaluated under the *Ford* burden shifting analysis, as cited previously. "To establish a prima facie case of discrimination under § 31-290a, the plaintiff must show that [he] was exercising a right afforded [him] under the [Workers' Compensation Act (act), General Statutes § 31-275 et seq.] and that the defendant discriminated against [him] for exercising that right. . . . [T]he plaintiff must show a causal connection between exercising [his] rights under the act and the alleged discrimination [he] suffered. Implicit in this requirement is a showing that the defendant knew or was otherwise aware that the plaintiff had exercised [his] rights under the act. . . . [T]o establish [a] prima facie case of discrimination, the plaintiff must first present sufficient evidence . . . that is, evidence sufficient to permit a rational trier of fact to find [1] that [he] engaged in protected [activity] . . . [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action . . . ." (Internal quotation marks omitted.) *Martin* v. *Westport*, 108 Conn. App. 710, 717–18, 950 A.2d 19 (2008).

because an award for attorney's fees is analyzed separately. See *Paranteau* v. *DeVita*, 208 Conn. 515, 522–23, 544 A.2d 634 (1988) ("decisions on the merits and those on attorney's fees will be treated separately, giving clear guidance as to when an appeal on the merits must be taken"). Therefore, we conclude that the decision of the commissioner was a final judgment and that this appeal is properly before us.

"A causal connection may be established either indirectly by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by a defendant." (Emphasis omitted; internal quotation marks omitted.) Id., 719.

"The plaintiffs must present some evidence from which a trier of fact could infer that the employer discharged or discriminated against the employees because they had exercised their rights under the [act]. . . . Without some proof of an improper motive, [a plaintiff's] case must fail." (Citation omitted; internal quotation marks omitted.) *Erisoty* v. *Merrow Machine Co.*, 34 Conn. App. 708, 711, 643 A.2d 898, cert. denied, 231 Conn. 908, 648 A.2d 151 (1994). "[Section] 31-290a . . . does not require an employer to retain an employee unable to perform his or her work simply because that inability resulted from a work related injury or illness." *Chiaia* v. *Pepperidge Farm, Inc.*, 24 Conn. App. 362, 366, 588 A.2d 652, cert. denied, 219 Conn. 907, 593 A.2d 133 (1991). "[I]t is the plaintiff's ultimate burden to prove that the defendant intentionally discriminated against [him] . . . ." (Internal quotation marks omitted.) *Mele* v. *Hartford*, 270 Conn. 751, 768–69, 855 A.2d 196 (2004).

"[B]ecause the commissioner is essentially fulfilling the role of a trial court in adjudicating § 31-290a claims, the commissioner's findings of fact and conclusions of law, like those of a trial court, should be reviewed on appeal under . . . the clearly erroneous standard. . . .

"[U]nder the fact-bound nature of determinations regarding what actions, as a matter of law, may constitute employment discrimination, a clearly erroneous

standard [is] most appropriate. . . . Under such a standard, [a] finding . . . is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) Id., 767.

In the present case, it is undisputed that the plaintiff established three of the four elements of a prima facie case of discrimination: the plaintiff engaged in the protected activity of filing a workers' compensation claim; the defendant was aware of the filing; and the employer took adverse action against the plaintiff, namely, termination from employment with the city. The defendants argue that the commissioner's conclusion that there was a causal connection between the plaintiff's exercise of his right to workers' compensation benefits and his termination by the city was clearly erroneous. The commissioner cited as support for his finding that the plaintiff proved discrimination that the plaintiff was accused by a supervisor of faking his shoulder injury and despite being given a light duty assignment in the roadway division until his February 28, 2008 surgery, he often performed full duty tasks such as shoveling sand.

There was evidence to support the finding that there was a causal connection between the exercise of the protected activity and the adverse employment action. The plaintiff testified that his supervisor in the sanitation division told him that the plaintiff was "faking [his] injury and he would get to the bottom of it." The plaintiff additionally testified that when he worked, between the times of his injury and his surgery, his duties included "[s]hoveling sand from a mason's dump into a fireman's fifty gallon drum" and that "[he] was not going to refuse any kind of work because they were looking to get

rid of [him]." The commissioner expressly found the plaintiff credible and persuasive.

"It [is] the commissioner's function to find the facts and determine the credibility of witnesses . . . ." (Internal quotation marks omitted.) *Testone* v. *C. R. Gibson Co.*, 114 Conn. App. 210, 222, 969 A.2d 179, cert. denied, 292 Conn. 914, 973 A.2d 663 (2009). In *Valdes* v. *Yankee Casting Co.*, 94 Conn. App. 140, 891 A.2d 994 (2006), in upholding the workers' compensation commissioner's ruling that the plaintiff established a prima facie case pursuant to § 31-290a, the court reasoned that the commissioner found that the defendant employer's vice president "stated that he was tired of the plaintiff's absences and problems with his knee. As noted, it is not the role of this court to retry the case." Id., 145–46.

The commissioner's finding of the existence of a causal connection between the plaintiff's exercise of his right to workers' compensation benefits and his termination by the city was not clearly erroneous. The plaintiff was the only witness to testify, and the commissioner found his testimony credible. He testified that he was injured when he was lifting trash cans in the sanitation division, and he reported his injury to his supervisor. He stated that following the injury, "it was punishment . . . that they took me out of lines and signs and put me back down there [in the roadway division] because I had gotten hurt in sanitation. . . . I was in lines and signs prior to my injury. When I got hurt, they were a little upset at me because I went and got hurt. They took me out of lines and signs and put me [in] roadway . . . ." The plaintiff further stated that while in the roadway division, his job duties included shoveling sand from a mason's dump into a fireman's fifty gallon drum and that despite the repetitive lifting required for such tasks, he "was not going to refuse

any kind of work because they were looking to get rid of [him]."

The defendants argue that the record does not support the commissioner's finding that the city's argument that the collective bargaining agreement was uniformly applied to all employees lacked credibility. As mentioned previously, the commissioner cited three grounds for his finding: "The fact that the [c]ity attempted to begin the [twelve] month leave of absence on the day of injury despite the [plaintiff] having continued to work for almost three months afterward, and [t]he fact that the [c]ity attempted to apply its neutral [twelve] month termination requirement more than [fourteen] months after it contended the [twelve] month leave of absence began, and [t]he fact that the [c]ity attempted to apply its neutral [six] month extension policy over the next [six] weeks rather than [six] months." The defendants assert that the fact that the city incorrectly calculated the plaintiff's leave of absence from the date of his injury does not support a finding of discriminatory intent; rather, it demonstrates only that a clerical mistake was made and that the city accepted the workers' compensation claim of the plaintiff as compensable.

The commissioner found that the plaintiff satisfied his burden to show that the reason for termination advanced by the city was not credible. First, the city calculated the twelve month leave of absence from the date of injury, December 10, 2007, instead of from the date the plaintiff actually stopped working, roughly two months later. Second, the city attempted to apply the twelve month termination requirement more than fourteen months after it contended the twelve month leave of absence began. The city calculated that the leave began on December 10, 2007, yet it did not inform the plaintiff that his leave of absence had been so calculated until February 23, 2009, the date of the city's letter.

Third, the city attempted to apply its neutral six month policy over the next six weeks rather than six months.

From these underlying facts, it was not unreasonable for the commissioner to infer a causal connection, particularly in light of the plaintiff's testimony, which the commissioner credited, that the city was trying to "get rid of [him]." The defendants argue that the events at issue were a result of an innocent mistake in calculation despite the persistent repetition. Although the supposition of an innocent mistake may have been reasonable, the commissioner found to the contrary, and the evidence before the commissioner was sufficient to satisfy a prima facie showing of a causal connection between the required animus and the termination. Under the *Ford* analysis, the third step is satisfied when a prima facie case has been established and the employer's proffered reason is found to be pretextual.

II

The defendants next claim that the commissioner erred in denying their motion to open the award and for a new trial. Specifically, the defendants claim that the commissioner erred "in reaching a decision without holding a hearing, and in exercising his discretion with respect to the [m]otion . . . on the papers themselves." We disagree.

The defendants sought to submit to the court a decision of the state board of mediation and arbitration dated November 22, 2010, determining that the plaintiff was a probationary employee at the time of his injury and thus had no rights under the collective bargaining agreement, including a right to a leave of absence or a temporary modified duty assignment. They also sought to offer full job descriptions of the plaintiff's positions that were in effect at the time of the plaintiff's injury, in order to show that the plaintiff physically could not have performed the duties of these jobs, as well as a

physical demand analysis on the maintainer positions in the roadway division conducted six months before the plaintiff's injury, which described the physical demands required of the plaintiff's position held at the time of his injury.

We review the defendants' claim under an abuse of discretion standard. See *Dzienkiewicz* v. *Dept. of Correction*, 291 Conn. 214, 220, 967 A.2d 1183 (2009) (noting previous Connecticut Supreme Court case that applied abuse of discretion standard to decision of workers' compensation commissioner to open award to allow new evidence); *Krol* v. *A.V. Tuchy, Inc.*, 135 Conn. App. 854, 860, 44 A.3d 185 (2012) ("[t]he decision to open an award is within the discretion of the commissioner" [internal quotation marks omitted]); *Davies* v. *Jezek*, 123 Conn. App. 555, 564, 3 A.3d 112 (2010) (standard of review on claims of new trial reviewed under abuse of discretion standard). "An abuse of discretion means a ruling made on untenable grounds." *Farrell* v. *Bass*, 90 Conn. App. 804, 810, 879 A.2d 516 (2005).

"While a workers' compensation award may, under the appropriate circumstances, be opened, the decision to do so and to modify the award is within the sound discretion of the commissioner. . . . The commissioner must deny the motion [to open] unless further hearing would produce evidence of such character and force that it would be likely to cause a different result. . . . In *Meadow* v. *Winchester Repeating Arms Co.*, [134 Conn. 269, 57 A.2d 138 (1948)] the court stated that [a] party to a compensation case is not entitled to try his case piecemeal, to present a part of the evidence reasonably available to him and then, if he loses, have a rehearing to offer testimony he might as well have presented at the original hearing. . . . Where an issue has been fairly litigated, with proof offered by both parties, a claimant should not be entitled to a further hearing to introduce cumulative evidence, unless its

character or force be such that it would be likely to produce a different result. . . .

"The test by which the commissioner determines whether to open a claim is whether the new evidence [is] sufficient to show that an injustice had been done by his award and that a different result would probably be reached on a new hearing. . . . As our Supreme Court pointed out in *Meadow*, the action of a compensation commissioner upon a motion to open his award for the purpose of hearing further evidence is like that of a court upon a motion for a new trial. . . . In *Besade* v. *Interstate Security Services*, [212 Conn. 441, 452, 562 A.2d 1086 (1989)], the court specifically held that a claimant seeking to open a workers' compensation proceeding must establish the following by a preponderance of the evidence: (1) the proffered evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence; (2) it would be material on a new trial; (3) it is not merely cumulative; and (4) it is likely to produce a different result in a new trial. Just as the decision whether to grant a new trial rests within the discretion of the trial court . . . the decision whether to open a compensation hearing and to admit additional evidence rests very largely within the discretion of the commissioner. . . . Importantly, it is the [movant] who bears the burden of showing that there is new evidence that is likely to produce a different result." (Citations omitted; internal quotation marks omitted.) *Tutsky* v. *YMCA of Greenwich*, 28 Conn. App. 536, 541–43, 612 A.2d 1222 (1992).

We have found no authority holding that the commissioner was required to hold a hearing before deciding the defendants' motion. Section 31-290a provides that a hearing shall be held to hear the complaint, but does not expressly require any further hearing. The legislature knows how to create a right to a hearing, as it has done regarding the complaint; it has not created a right

to a hearing for a motion to open a finding and award. There is no claim that the parties were prevented from advancing their positions by submitting written materials and briefs.[6]

The defendants' contention that the commissioner erred in denying their motion to open the award and for a new trial is without merit. The decision of the state board of mediation and arbitration is not germane, and would not compel a different result, because § 31-290a provides rights to employees independent of those under the collective bargaining agreement. See *Genovese* v. *Gallo Wine Merchants, Inc.*, 226 Conn. 475, 487, 628 A.2d 946 (1993) (holding that adverse determination in arbitration proceeding not entitled to preclusive effect on plaintiff's cause of action under § 31-290a); cf. *Baldracchi* v. *Pratt & Whitney Aircraft Division*, 814 F.2d 102, 105 (2d Cir. 1987), cert. denied, 486 U.S. 1054, 108 S. Ct. 2819, 100 L. Ed. 2d 920 (1988). Additionally, the defendants failed to demonstrate by a preponderance of the evidence that the job descriptions and physical demand analysis "could not have been discovered earlier by the exercise of due diligence . . . ." (Internal quotation marks omitted.) *Besade* v. *Interstate Security Services*, supra, 212 Conn. 452. They offer no reason as to why due diligence would not have yielded those documents.[7] The commissioner further could

[6] In light of the volume of materials presented to commissioners and the congested dockets, we see no compelling reason to impose the need for a hearing "in person." Nothing prevents a commissioner from scheduling such a hearing in his or her discretion.

[7] The defendants assert: "A party may offer new evidence even if the evidence was available at the time of the original trial/formal, so long as the party has not intentionally withheld the evidence. See *Meadow* v. *Winchester Repeating Arms Co.*, supra, 134 Conn. 274." In *Meadow*, the court held that although new evidence, specifically new testimony from witnesses, was not cumulative, it would not have changed the result and thus the commissioner did not abuse his discretion in denying the claimant's motion to open. Id., 275–76. Although our Supreme Court in *Meadow* stated: "[M]ere inadvertence on [the claimant's] part, mere negligence, without intentional withholding of evidence, particularly where there is no more than technical prejudice

have found that the newly proffered evidence would not change the result. Accordingly, the defendants failed to satisfy their burden of showing that the commissioner abused his discretion.

## III

The defendants next claim that the commissioner erred in not granting the motion to correct in its entirety. We disagree.

"It is the quintessential function of the finder of fact to reject or accept evidence and to believe or disbelieve any expert testimony. . . . We will not change the finding of the commissioner unless the record discloses that the finding includes facts found without evidence or fails to include material facts which are admitted or undisputed. . . . It [is] the commissioner's function to find the facts and determine the credibility of witnesses . . . and a fact is not admitted or undisputed merely because it is uncontradicted. . . . A material fact is one that will affect the outcome of the case. . . . Thus, a motion to correct is properly denied when the additional findings sought by the movant would not change the outcome of the case." (Citation omitted; internal quotation marks omitted.) *Krol* v. *A.V. Tuchy, Inc.*, supra, 135 Conn. App. 863.

The defendants claim that the commissioner improperly denied proposed corrections, which "related to the [c]ommissioner's conclusion that the [city] violated § 31-290a and to the [c]ommissioner's order regarding reinstatement of the plaintiff." The defendants seek to

---

to the adverse party, should not *necessarily* debar him of his rights, and despite these circumstances a commissioner in the exercise of his discretion *might* be justified in opening an award. No definite rule can be formulated . . . ."; (emphasis added) id., 274; it specifically held in *Besade* v. *Interstate Security Services*, supra, 212 Conn. 452, that a claimant who wants to open a compensation proceeding must demonstrate that the new evidence could not have been discovered through due diligence.

retry the case, which is not appropriate in the context of a motion to correct. Because we have determined that the commissioner's findings are not clearly erroneous, we conclude that the commissioner did not abuse his discretion when he denied corrections proposed by the defendants.

## IV

The defendants next claim that the commissioner erred in deciding issues and ordering damages beyond the scope of issues submitted and agreed to by the parties. The defendants claim that "[t]he commissioner clarified on the record during the course of the formal hearing that the sole issue to be addressed would be whether the [city] had discriminatorily discharged the plaintiff and that the issue of damages was to be addressed at a later date, if necessary," but that the commissioner ordered damages in his finding and award.

The defendants point to a discussion at the hearing on the plaintiff's workers' compensation claim in which the commissioner stated that he did not "think" that a discussion of damages was "necessary right now," and that the "issue . . . is solely whether [the plaintiff] was discharged justly or not." During the course of the hearing, however, the plaintiff presented evidence as to the amount of damages he suffered, without objection. There was no express order forbidding the discussion of damages at the hearing. The commissioner had evidence before him regarding damages and did not deprive the defendants of their due process rights.[8]

## V

The defendants finally claim that the commissioner erred by interpreting and applying alleged rights under

---

[8] The commissioner, as noted previously, decided only the categories of damages to be paid. The defendants indicated in their supplemental brief to this court that the calculation of damages would be a ministerial exercise.

the collective bargaining agreement. Specifically, the defendants claim that the commissioner exceeded his statutory authority in interpreting the collective bargaining agreement in that he found that the plaintiff was a member of the union and that the city's leave of absence policy is contained in article 37 of the collective bargaining agreement. We disagree.

"[B]ecause the commissioner is essentially fulfilling the role of a trial court in adjudicating § 31-290a claims, the commissioner's findings of fact and conclusions of law, like those of a trial court, should be reviewed on appeal under . . . . the clearly erroneous standard." *Mele* v. *Hartford*, supra, 270 Conn. 767.

The collective bargaining agreement was submitted by the defendants and accepted by the commissioner as a full exhibit. The commissioner considered the agreement, insofar as the defendants presented it, as neutrally applied to the plaintiff in the context of his claim under § 31-290a. The commissioner did not decide rights or obligations under the agreement, but rather accepted it as evidence of the standard policy in effect regarding the termination of an employee's employment after a leave of absence.

The decision of the workers' compensation commissioner is affirmed.

In this opinion the other judges concurred.