CYNTHIA BESADE *v.* INTERSTATE SECURITY
SERVICES ET AL.
(13689)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued June 14—decision released August 8, 1989

*Richard S. Bartlett,* for the appellants (named defendant et al.).

*Mark W. Oberlatz,* with whom, on the brief, was *Matthew Shafner,* for the appellee (plaintiff).

PETERS, C. J. The central issue in this appeal is the validity of a workers' compensation commissioner's award issued over three and one-half years after the close of the hearings. The commissioner concluded that the plaintiff, Cynthia Besade, was entitled to workers' compensation benefits because her disability was causally related to an injury she had received while employed by the defendant Interstate Security Services (ISS). After the commissioner denied their motion to open, the defendants appealed to the workers' compensation review division (review division),[1] which affirmed the award. They then appealed to the Appellate Court and we transferred the appeal to ourselves pursuant to Practice Book § 4023. We find no error.

The facts relevant to this appeal are as follows. On December 5, 1980, while employed by ISS, the plaintiff suffered a compensable injury when she inhaled ammonia fumes. She experienced coughing, difficulty in breathing and chest tightness and was taken to Lawrence and Memorial Hospital by ambulance. She continued to suffer recurrent pain, fever and gastrointestinal distress after her discharge from the hospital. In the spring of 1981, she experienced pain in her jaw,

---

[1] Interstate Security Services and its insurance company, Crawford and Company, were joined by the state treasurer, as custodian of the Second Injury and Compensation Assurance Fund, in the appeal to the workers' compensation review division. The review division dismissed the state treasurer's appeal, which dismissal has not been appealed. Accordingly, references to the defendants henceforth refer only to ISS and Crawford and Company.

joints and bones, accompanied by swelling of her lymph nodes, which was diagnosed as mononucleosis. Subsequently, she experienced increased headaches and her doctor referred her to a dentist who concluded that she suffered from temporomandibular joint dysfunction.

ISS paid the plaintiff workers' compensation until March 20, 1983, when the commissioner approved its notice of intention to discontinue payments. The plaintiff contested the approval and the commissioner held a formal hearing, which closed on September 19, 1983. On April 29, 1987, the commissioner issued his finding and award, which held that the plaintiff's disability, temporomandibular joint dysfunction, was causally related to her compensable injury, and, therefore, was compensable. After a denial of the defendants' subsequent motion to open, they appealed to the review division which, on January 13, 1989, affirmed the commissioner's decision in all respects, but limited his finding and award "to the situation prior to and up to September 19, 1983." The review division remanded the case for further hearings "to address the situation thereafter."

On appeal the defendants claim that the review division erred in affirming the commissioner's award because the plaintiff had not established by a preponderance of the evidence that her temporomandibular joint dysfunction was causally related to her inhalation of ammonia fumes and because the lengthy delay in rendering his decision denied the defendants due process. The defendants also claim that the commissioner should have granted their motion to open the award.[2] These claims are unpersuasive.

[2] The defendants raised virtually identical claims before the review division, which addressed each of their claims. They claimed that the commissioner had made evidentiary errors, that the long delay between the close of the hearings and the award constituted denial of due process and that their motion to open should have been granted.

## I

Before addressing the defendants' claims, we must determine whether this appeal is properly before this court. This appeal bears some similarity to *Matey* v. *Estate of Dember,* 210 Conn. 626, 556 A.2d 599 (1989), a workers' compensation case, in which we held that the appeal was premature because we concluded that the review division, in remanding the case for further evidentiary proceedings to determine the appropriate compensation rate, had not rendered a final judgment. The present appeal, however, is not premature. We conclude that the award was a final judgment as to the plaintiff's entitlement to workers' compensation benefits through September 19, 1983, the date of the last hearing, because the award contained a finding of the amount due through that date and the review division limited its remand to a determination of the plaintiff's entitlement to benefits after that date.

Pursuant to General Statutes § 31-315,[3] a workers' compensation award is always limited to a claimant's current condition and always subject to later modification upon the request of either party during the entire period of compensation if the complainant's condition

[3] General Statutes § 31-315 provides: "Any award of, or voluntary agreement concerning, compensation made under the provisions of this chapter shall be subject to modification, upon the request of either party and in accordance with the procedure for original determinations, whenever it appears to the compensation commissioner, after notice and hearing thereon, that the incapacity of an injured employee has increased, decreased or ceased, or that the measure of dependence on account of which the compensation is paid has changed, or that conditions of fact have arisen which necessitate a change of such agreement or award in order to properly carry out the spirit of this chapter. The commissioner shall also have the same power to open and modify an award as any court of the state has to open and modify a judgment of such court. The compensation commissioner shall retain jurisdiction over claims for compensation, awards and voluntary agreements, for any proper action thereon, during the whole compensation period applicable to the injury in question."

changes. Accordingly, any workers' compensation award, although a final judgment as to benefits through the date of the hearing, is always subject to further proceedings, such as those ordered in the present case, to determine whether the award should be modified. If such an award were not a final judgment because it was subject to such modification, no workers' compensation award could ever be final, and therefore appealable, until the claimant either died or recovered, thereby ending the disability period.

Awards under other statutes that provide for subsequent modification in the event of changed circumstances have been viewed as final judgments for purposes of appeal. For example, General Statutes § 46b-86 (a),[4] permits modification of orders for the periodic payment of permanent alimony or support, and General Statutes § 46b-56[5] permits modification of orders concerning child custody and visitation. Nonetheless, alimony, support, custody and visitation orders have routinely been treated as final judgments for purposes of an appeal. See, e.g., *Blake* v. *Blake,* 211 Conn. 485, 560 A.2d 396 (1989); *Perez* v. *Perez,* 212 Conn. 63, 561 A.2d 907 (1989). We conclude, therefore, that the workers' compensation award in this case is a final judgment that is presently appealable.

## II

With respect to the merits of their appeal, the defendants first contend that the review division erred in

[4] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party."

[5] General Statutes § 46b-56 provides in relevant part: "[T]he court may at any time make or modify any proper order regarding the education and support of the children and of care, custody and visitation . . . . "

upholding the commissioner's award because the plaintiff failed to prove that her disability was causally related to her injury at work.[6] This claim of error has two parts: (1) that the review division erred procedurally by employing an improper standard in reviewing the findings of the commissioner; and (2) that the review division erred substantively in its conclusion about the required causal relationship.

The decision of the review division on the causal relationship between the plaintiff's injury and her present temporomandibular condition[7] relied on the record created in the hearing before the commissioner. At that hearing, the commissioner received two reports from Mark R. Cullen, M.D., which stated his belief that the plaintiff's exposure to ammonia fumes had caused her to have mononucleosis and swollen lymph glands, which in turn contributed to her temporomandibular joint dysfunction.[8] The commissioner also received the testi-

[6] The defendants agree that the plaintiff suffered a compensable injury when she inhaled ammonia fumes at work, but allege that her temporomandibular joint dysfunction is not causually related to that injury.

[7] The award states that, at the time of the hearing, the plaintiff was "suffering from discomfort in the jaw, swelling of the lymph nodes, asthmatic reaction to dust and fumes, headaches, gastrointestinal problems, difficulty eating hard foods, and fatigue. She experienced some days when these symptoms became so intense that she had difficulty carrying on the normal activities of daily life." "It is found that claimant suffered an injury which arose during and out of the course of her employment . . . . It is further found that she was totally disabled from work as a result of said exposure which caused respiratory problems, i.e. bronchitis and pneumonia; as a further result of said exposure claimant contracted mononucleosis which in turn caused swelling of the lymph glands on the neck, i.e. cervical adnopathy, which ultimately resulted in [temporomandibular] joint dysfunction."

[8] Mark R. Cullen, M.D., on August 25, 1982, wrote: "While infectious mononucleosis is not an occupational illness in its own right, I believe it does represent an infectious complication of her underlying airway problem." On February 2, 1983, he stated that the plaintiff "developed a rather typical case of mononucleosis with first development of lymphadenopathy

mony of I. L. Cantner II, D.M.D., who gave his opinion that the plaintiff's "signs and symptoms currently relate to the disease entity, which apparently relates to the industrial [exposure to ammonia fumes]."[9] The commissioner also received further evidence, some of which contradicted the clinical opinions of the plaintiff's expert witnesses.

In its appraisal of this record, the review division concluded that the record supported the commissioner's finding that the plaintiff's temporomandibular joint dysfunction was work related. The review division took the view that, as an appellate tribunal, it should not interfere with the trier's factual findings "when . . . evidence exists to support them."

The defendants claim that the review division should not have deferred to the commissioner as fact finder, because the evidence before the commissioner was

---

and fever in the summer or late spring of 1981. . . . I believe that some of the stimulus for her temporomandibular [joint] dysfunction must be related to her recurrent adenopathy on the left side."

[9] The testimony of I. L. Cantner II, D.M.D., included in relevant part: "I feel that there's a likelihood that [the temporomandibular joint dysfunction] was caused by an indirect route from the lymphadenopathy, or recurrent lymphadenopathy, occurring in [this] case. . . . There's a possibility, let me state, that this has occurred or was present for many years, and that the signs and symptoms of the case have only been severely aggravated or precipitated by the lymphadenopathy caused by the . . . apparent industrial accident. Therefore, in either case I think her signs and symptoms currently relate to the disease entity, which apparently relates to the industrial—the disease entity of the recurrent lymphadenopathy . . . . Through the reports that I got from Dr. Cullen, it was directly apparent that he diagnosed [the swelling of the lymph nodes] as due to the exposure of a chemical which was inhaled in an industrial accident causing the lymphadenopathy and recurrent mononucleosis, or recurrent swelling of the nodes. . . . The swollen lymph glands can cause significant pain in the cervical musculature. This pain can cause spasms of the posterior extension head movement. Then via afferent central nervous system input in the cervical musculature you develop reflex adaption of an anterior head posture. . . . You then get muscle bracing, spasm of the muscles, stomatognathic muscles, and finally [temporomandibular] joint dysfunction and pain."

largely documentary, including medical reports and depositions. To the extent that the commissioner's assessment of the evidence before him did not rest on a personal appraisal of the demeanor and credibility of the witnesses before him, they urge us to hold that such deference is inappropriate and to engage in a broader appellate scrutiny. We are unpersuaded.

In *Fair* v. *People's Savings Bank,* 207 Conn. 535, 539, 542 A.2d 1118 (1988), we construed General Statutes § 31-301 (a)[10] and Regulations of Connecticut State Agencies § 31-301-8[11] to require the review division "to hear the appeal on the record and not 'retry the facts.' " See *Castro* v. *Viera,* 207 Conn. 420, 440, 541 A.2d 1216 (1988). It is the commissioner who has the power and the duty to determine the facts; *Adzima* v. *UAC/Norden Division,* 177 Conn. 107, 118, 411 A.2d 924 (1979); and the review division may take evidence in addition to that certified to it by the commissioner only if good reason exists why the evidence was not presented to the commissioner. *Fair* v. *People's Savings Bank,*

[10] General Statutes § 31-301 (a) provides in pertinent part: "The compensation review division shall hear the appeal on the record of the hearing before the commissioner, provided, if it is shown to the satisfaction of the division that additional evidence or testimony is material and that there were good reasons for failure to present it in the proceedings before the commissioner, the compensation review division may hear additional evidence or testimony."

[11] Regulations of Connecticut State Agencies § 31-301-8 provides: "FUNCTION OF COMPENSATION REVIEW DIVISION. Ordinarily, appeals are heard by the compensation review division upon the certified copy of the record filed by the commissioner. In such cases the division will not retry the facts or hear evidence. It considers no evidence other than that certified to it by the commissioner, and then for the limited purpose of determining whether the finding should be corrected, or whether there was any evidence to support in law the conclusion reached. It cannot review the conclusions of the commissioner when these depend upon the weight of the evidence and the credibility of witnesses. Its power in the corrections of the finding of the commissioner is analogous to, and its method of correcting the finding similar to the power and method of the Supreme Court in correcting the findings of the trial court."

supra. " 'The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them.' " Id., quoting *Adzima* v. *UAC/Norden Division*, supra, 117–18; *Mathurin* v. *Putnam*, 136 Conn. 361, 366, 71 A.2d 599 (1950).

The defendants' argument cannot be reconciled with the holdings of these precedents. We have not heretofore distinguished between documentary and testimonial evidence in defining the role of appellate tribunals in reviewing findings of fact; see, e.g., *Connecticut Bank & Trust Co.* v. *Wilcox*, 201 Conn. 570, 576, 518 A.2d 928 (1986); *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.*, 183 Conn. 266, 274–75, 439 A.2d 314 (1981); *DiLieto* v. *Better Homes Insulation Co.*, 16 Conn. App. 100, 104, 546 A.2d 957 (1988); and we are not prepared to introduce such a distinction into administrative proceedings.[12]

Since the correct standard, as the review division held, is one of review on the record, we find no error in its conclusion that the evidence provided by Cantner and Cullen provided a tenable basis for the commissioner's finding that the plaintiff's condition at the time of the hearing was causally related to her inhalation of ammonia fumes while employed. See *McDonough* v. *Connecticut Bank & Trust Co.*, 204 Conn. 104, 118, 527 A.2d 664 (1987) (traditional proximate cause concepts furnish the appropriate analysis for determining causation in workers' compensation cases). These experts linked the plaintiff's exposure to ammonia fumes to swollen lymph glands resulting from

---

[12] We note, furthermore, that the record in this case was not wholly documentary. The defendants' medical experts, Michael M. Conway, a lung specialist, and Lester L. Luntz, a dentist, testified at the hearings. The plaintiff also testified.

mononucleosis, and linked her temporomandibular joint dysfunction to the swelling of her lymph glands. The defendants cannot prevail on this claim of error.

## III

The defendants next claim that the review division erred in upholding the commissioner's award because the three and one-half year interval between the hearings and the award violated their right to due process.[13] Although we do not condone the delay that occurred in this case, the defendants cannot overturn an adverse award on this ground unless they can demonstrate that they have been prejudiced. In our view, they have failed to make such a showing.

The general rule is that, absent a violation of a specific statutory provision, delay in civil proceedings does not necessitate a new trial without a showing of prejudice. Even in criminal prosecutions, an impairment of a defendant's constitutional and statutory rights to a speedy trial does not mandate automatic dismissal of the charges, but rather triggers a balancing test, the most important factor of which is prejudice to the defendant; *Barker* v. *Wingo,* 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *State* v. *Herring,* 210 Conn. 78, 89, 554 A.2d 686 (1989); see also *Statewide Grievance Committee* v. *Rozbicki,* 211 Conn. 232, 243 n.6, 558 A.2d 986 (1989). A fortiori, delay in the rendering of a civil award does not automatically make the award invalid or mandate a rehearing.

---

[13] The defendants originally alleged that the award was governed by, and in violation of, General Statutes § 31-300, which provides that "[a]s soon as may be after the conclusion of any hearing, but no later than one hundred twenty days after such conclusion, the commissioner shall send to each party a written copy of his award." They agreed at oral argument, however, that, because the hearing occurred before the effective date of the amendment that added the 120 day provision; Public Acts 1985, No. 85-64; this case is governed by § 31-300 (Rev. to 1985), which contained no explicit time constraints specifying when the commissioner must render the award.

Recognizing that prejudice is the linchpin to this claim of error, the defendants claim that the commissioner's delay injured them in two respects. Neither one persuades us.

The defendants first allege that they were prejudiced because they are "faced with a gap of 3 1/2 years without any medical evidence serving to document what the [plaintiff's] disability status was, yet they have been ordered to pay her benefits until her disability ceases or diminishes." This allegation is without merit. The review division, having concluded that the plaintiff's entitlement to benefits had been determined only through the date of the hearings, remanded the case for further hearings to determine the plaintiff's entitlement to benefits after that date, i.e., during "the gap." There is, therefore, no order that the defendants make any payments based upon the plaintiff's medical condition during "the gap."

The defendants' other allegation of prejudice hypothesizes that because of the interval occasioned by the delay and the complexity of the issues involved, the commissioner could not have retained an accurate memory for their witnesses' testimony and thus must have failed to give adequate weight to their testimony in making his findings. The defendants acknowledge that the commissioner might have taken notes at the time of the hearings, but they emphasize that he did not have a transcript of the testimony of their witnesses. They therefore conclude that the commissioner relied exclusively on the plaintiff's documentary and deposition evidence, in derogation of his duty to weigh all the evidence that he would have recalled had the award been prepared earlier. These speculations find no support in the record. The award does not indicate that the delay in its preparation in any way interfered with the commissioner's ability to recollect accurately

all the evidence that was presented to him. The defendants have, therefore, failed to demonstrate that the delay prejudiced them in any way.[14]

## IV

The defendants' final claim is that the review division erred in affirming the commissioner's denial of their motion to open the award. They contend that reports from Casper Burke, a dentist who treats temporomandibular joint dysfunction,[15] constitute new evidence such that the commissioner should have opened the award. We disagree.

As the defendants acknowledge, *Asherman* v. *State,* 202 Conn. 429, 521 A.2d 578 (1987), sets forth the standard that governs a motion for a new trial based upon newly discovered evidence. "The petitioner must demonstrate, by a preponderance of the evidence, that: (1) the proffered evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence; (2) it would be material on a new trial; (3) it is not merely cumulative; and (4) it is likely to produce a different result in a new trial." Id., 434. "This strict standard is meant to effectuate the underlying 'equitable principle that once a judgment is rendered it is to be considered final,' and should not be disturbed by posttrial motions except for a compelling reason." Id., quoting *Steve Viglione Sheet Metal Co.* v. *Sakonchick,* 190 Conn 707, 713, 462 A.2d 1037 (1983). The defendants cannot meet this standard.

In order to prevail on the denial of their motion for the opening of the award, the defendants must dem-

---

[14] To the contrary, the delay has incidentally benefited them. The defendants were able to postpone paying the benefits due to the plaintiff until after the three and one-half year delay and, pending the outcome of this appeal, have not, as yet, been required to make such payments. It appears, therefore, that if any party suffered from the delay, it was the plaintiff.

[15] The plaintiff consulted Burke regarding surgery to correct her temporomandibular joint dysfunction.

onstrate an abuse of discretion on the part of the commissioner. *Metall* v. *Aluminum Co. of America,* 154 Conn. 48, 53, 221 A.2d 260 (1966); *Meadow* v. *Winchester Repeating Arms Co.,* 134 Conn. 269, 274, 57 A.2d 138 (1948). It is their burden to show that there is new evidence that is likely to produce a different result. *Metall* v. *Aluminum Co. of America,* supra; see *Meadow* v. *Winchester Repeating Arms Co.,* supra.

The review division concluded that Burke's testimony would be cumulative and affirmed the commissioner's decision not to open the award, stating that "[u]nder the circumstances, given the limited role of an appellate tribunal, we cannot say the trier's ruling in the matter was unreasonable or an abuse of discretion." We agree. Burke's statements regarding the causation of the plaintiff's temporomandibular joint dysfunction was cumulative of the testimony of the defendants' expert witnesses before the commissioner, which conflicted with that of the plaintiff's experts.[16] Further, the commissioner rendered his award based upon the record, which closed on September 19, 1983, and covers the plaintiff's condition until that date only. Burke's reports, however, are dated July 2, 1986, January 27, 1987, and October 7, 1987, long after the hearings were concluded and the record was closed.

Under these circumstances, we conclude that the defendants have failed to demonstrate that the commissioner abused his discretion in refusing to open the hearing. We note, in addition, that although the cau-

[16] On July 2, 1986, Burke stated: "The history of this patient's temporomandibular joint condition does not appear to be related to the incident . . . . " On January 27, 1987, however, he stated: "Although I cannot state the pre-existing condition of her temporomandibular joints prior to the exposure, I can state that the exposure to the ammonia fumes and the subsequent vomiting and severe coughing episodes can be either the primary cause of her present condition or severely aggravated a previously asymptomatic condition."

sation of the plaintiff's temporomandibular joint dysfunction is no longer at issue, the defendants now have the opportunity to have Burke's reports considered in determining the plaintiff's condition in the period subsequent to the close of the hearings.

There is no error.

In this opinion the other justices concurred.