JOHN DOE v. CITY OF STAMFORD ET AL.
(SC 15631)

Callahan, C. J., and Borden, Norcott, Katz and Peters, Js.

Argued May 29—officially released July 22, 1997

Stewart M. Casper, with whom, on the brief, were Victoria de Toledo and Renee M. Cannella, for the appellant (plaintiff).

Kevin J. Maher, with whom were James D. Moran, Jr., and James J. Sullivan, for the appellees (defendants).

*Opinion*

PETERS, J. The sole issue in this appeal is whether, under the Workers' Compensation Act (act), General Statutes § 31-275 et seq., an employee has suffered a compensable injury for purposes of recovering expenses for medical testing and treatment at a time when he has been exposed to, but has not yet contracted, a potentially fatal contagious disease. The claimant, John Doe,[1] an employee of the named defendant, the city of Stamford,[2] appealed from the decision of the compensation review board (review board) affirming the decision of the workers' compensation commissioner (commissioner). The commissioner had denied the claimant's application for compensation and his request for an order requiring the defendant to enter into a voluntary agreement with him. We transferred the appeal from the Appellate Court to this court pursu-

---

[1] As did the compensation review board, we will refer to the claimant as John Doe in order to protect his identity.

[2] The Connecticut Interlocal Risk Management Agency, the claims administrator for the city of Stamford, is also named as a defendant in this action. In the interest of simplicity, we will refer to the city of Stamford as the defendant.

ant to Practice Book § 4023 and General Statutes § 51-199 (c), and now reverse the judgment of the review board.

The parties have stipulated to the relevant facts, which arise out of two separate incidents. In the first incident, which occurred in February, 1993, the claimant, a police officer engaged in the performance of police duties, was exposed to the human immunodeficiency virus (HIV) when medical pads contaminated with body fluids of a criminal suspect came into contact with an open wound on the claimant's thumb. After the suspect revealed that he had tested positive for HIV, the claimant proceeded immediately to Stamford Hospital, where his wound was treated and he was released. In the second incident, which occurred in May, 1993, the claimant, again while engaged in the performance of police duties, was exposed to tuberculosis when he came into repeated, close physical contact with another criminal suspect who, it was later learned, suffered from an active case of that disease.

The claimant subsequently underwent testing for the two diseases. Although he did not test positive for either disease,[3] his physician recommended a follow-up consultation with respect to his HIV exposure. In connection with the initial testing, the claimant incurred bills for medical treatment and laboratory work. The defendant has paid for the laboratory services, but not for the medical treatment. With the exception of time lost for the medical testing, the claimant has missed no work as a result of these incidents and claims no loss of income.

The parties agree that both incidents arose out of and occurred in the course of the claimant's employ-

[3] Although a "tine test" performed on the claimant indicated that he had been exposed to tuberculosis, chest X rays revealed no evidence of the disease. As of the date of the oral argument, the claimant had not contracted either HIV or tuberculosis.

ment with the defendant. The parties further agree that the claimant's contacts with both suspects were sufficient to constitute "exposures" to HIV and tuberculosis. Nonetheless, although the claimant filed a timely application for compensation for past and future unpaid medical testing and treatment, the defendant refused his application and refused also to enter into a voluntary agreement with the claimant recognizing the compensability of his exposures. Accordingly, the claimant's compensation claim proceeded to a formal hearing before the commissioner. See General Statutes § 31-294c (b).

At the hearing, held in May and August, 1994, the principal witness for the claimant was Debra Adler-Klein, a physician specializing in infectious diseases. Adler-Klein testified that an exposure to HIV similar to that sustained by the claimant would, for at least one year thereafter, require regular testing, drug therapy and, potentially, psychological counseling.[4] She also testified that an exposure to tuberculosis similar to that sustained by the claimant would require testing and preventive drug therapy for at least six months. The defendant offered no contradictory medical testimony.

The commissioner denied the claimant's application for compensation. He found no fault with the claimant's factual representation but held that, as a matter of law, "mere exposure to infectious diseases does not give rise to a viable claim that the [c]laimant has suffered an injury or occupational disease" under the act.

The review board affirmed the commissioner's decision. The board agreed with the commissioner that exposure to an infectious disease, without more, constitutes neither a "personal injury" nor an "occupational disease" under the act. While recognizing that principles of equity militate against the defendant's refusal to

---

[4] The parties stipulated that the incubation period following an HIV exposure "can be several years."

cover the claimant's medical expenses, the review board concluded that, in the absence of statutory authorization, it could not compel the defendant to fulfill its equitable obligation. One member of the review board dissented.

On the claimant's appeal to this court, we must decide whether exposure to an infectious disease constitutes a compensable "injury" under the act.[5] The claimant contends that, in order to effectuate the act's humanitarian purposes, "injury" cannot be defined so narrowly as to exclude a serious risk of contracting a life threatening disease. At least, he argues, the term "injury" must be construed to include exposures in circumstances under which the prevailing standard of care calls for immediate and ongoing medical monitoring and treatment. The defendant urges us to uphold the decision of the commissioner and the review board. It contends that, in the absence of either visible physical trauma or present loss of income, a claimant has not suffered a compensable injury. We conclude that, under the circumstances of this case, in which the claimant concededly has sustained actual exposures to life threatening infectious diseases in incidents that arose out of and occurred in the course of his employment, the claimant has suffered compensable injuries under the act and may recover the expenses associated with reasonable medical testing and treatment.

The principles that govern our standard of review in workers' compensation appeals are well established. "The conclusions drawn by [the commissioner] from the facts found must stand unless they result from *an incorrect application of the law* to the subordinate facts or from an inference illegally or unreasonably drawn

---

[5] The claimant does not dispute the conclusion of the review board that exposure to a disease, without actual contraction of the disease, does not constitute an "occupational disease" under the act.

from them." (Emphasis added; internal quotation marks omitted.) *Besade* v. *Interstate Security Services*, 212 Conn. 441, 449, 562 A.2d 1086 (1989). Neither the review board nor this court has the power to retry facts. See *Six* v. *Thomas O'Connor & Co.*, 235 Conn. 790, 798–99, 669 A.2d 1214 (1996). Where, however, the appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision. See *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995) (state agency not entitled to special deference when its construction of statute has not undergone previous judicial scrutiny).

Although the parties have called our attention to the public policy implications of this case, the issue presented is, at bottom, a matter of statutory construction. General Statutes § 31-294d (a) provides in relevant part that "[t]he employer, as soon as he has knowledge of an *injury*, shall provide a competent physician or surgeon to attend the *injured* employee and, in addition, shall furnish any medical and surgical aid . . . as the physician or surgeon deems reasonable or necessary." (Emphasis added.) See also General Statutes § 31-294d (e) (if employer refuses to provide medical assistance, "the injured employee" may pursue medical assistance at employer's expense). The defendant does not dispute that the claimant's exposures to HIV and tuberculosis reasonably require both long and short term medical monitoring. The sole issue, rather, is whether these exposures constitute compensable "injuries" within the definitional boundaries of the act. We conclude that they do.

We reach this conclusion mindful both of general principles of statutory construction and of principles specifically applicable to workers' compensation law. As a general matter, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the

legislature." *State* v. *Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994). We discern that intent by looking to the statutory language, to legislative history and policy and to other legislation and common law principles. See id., 409. In appeals arising under workers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act. See *Hansen* v. *Gordon*, 221 Conn. 29, 32, 602 A.2d 560 (1992). Although we recognize that, in enacting workers' compensation law, the legislature did not intend to create "a general health and benefit insurance program"; id.; we do not read the act to include limitations on eligibility for compensation for which there is no statutory basis. See *Crochiere* v. *Board of Education*, 227 Conn. 333, 359, 630 A.2d 1027 (1993).

The dispositive statute in this case is General Statutes § 31-275 (16) (A), which defines the term "injury" to encompass an "accidental injury which may be definitely located as to the time when and the place where the accident occurred . . . ." There is no dispute in this case that the claimant's exposures to HIV and tuberculosis may be definitely located as to time or place or that they resulted from accidental contact with infected suspects. The commissioner and the review board concluded, however, that, because the claimant had not yet contracted either disease, he had not suffered an "injury" within the meaning of § 31-275 (16) (A).

Nothing in the text or the legislative history of the act supports such a limited reading of the statutory definition of "injury." See *Crochiere* v. *Board of Education*, supra, 227 Conn. 359 (§ 31-275 "uses the term 'injury' without limitation"). Although actual infection may be necessary to establish an "occupational disease" as that term is defined in § 31-275 (15),[6] the definition

---

[6] General Statutes § 31-275 (15) provides in relevant part: " 'Occupational disease' includes any disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such . . . ."

of "injury" in § 31-275 (16) (A) does not require a similar pathological manifestation. Indeed, it would be contrary to the humanitarian and remedial purpose of the act to infer that the legislature intended that an employee who sustains actual exposure to a potentially fatal infectious disease must await the onset of the disease before he can recover expenses associated with necessary,[7] and possibly lifesaving, medical intervention. See *Jackson Township Volunteer Fire Co.* v. *Workmen's Compensation Appeal Board (Wallet)*, 594 A.2d 826, 828 (Pa. Commw. 1991).[8]

The defendant raises two alternate grounds in support of the decision of the commissioner and review board. One focuses on the form of the claimant's injury and the other focuses on the extent of the injury. Neither ground is persuasive.

First, the defendant contends that the claimant has not suffered a compensable injury because his expo-

---

[7] The defendant does not dispute that, under federal law, an employee who has been exposed to HIV at the workplace is required to receive postexposure medical treatment, counseling and evaluation. See 29 C.F.R. c. XVII, § 1910.1030 (f) (3) (iv) through (vi). The claimant contends, and we agree, that it would undermine the importance of prompt medical testing to hold that an exposed employee must obtain this testing at his own cost.

[8] We note that, in the context of *tort law*, at least one court has set forth a four part inquiry to determine whether a plaintiff who has been exposed to, but has not yet contracted, an illness has stated a viable claim for economic damages associated with medical monitoring. See *In re Paoli R. Yard PCB Litigation*, 916 F.2d 829, 852 (3d Cir. 1990), cert. denied sub nom. *General Electric Co.* v. *Knight*, 499 U.S. 961, 111 S. Ct. 1584, 113 L. Ed. 2d 649 (1991) (*Paoli I*); see also *In re Paoli R. Yard PCB Litigation*, 35 F.3d 717, 788 (3d Cir. 1994), cert. denied sub nom. *General Electric Co.* v. *Ingram*, 513 U.S. 1190, 115 S. Ct. 1253, 131 L. Ed. 2d 134 (1995). Pursuant to this test, a plaintiff can succeed on such a claim if he demonstrates that: (1) he was significantly exposed to hazardous materials as a result of the negligence of the defendant; (2) as a proximate result of his exposure, he suffers a significantly increased risk of contracting a serious latent disease; (3) the increased risk makes regular medical monitoring and treatment reasonably necessary; and (4) the monitoring and treatment make early detection and/or prevention of the disease possible. *Paoli I*, supra, 916 F.2d 852. Although neither party has asked us to adapt this test to the context

sures were not accompanied by a physical wound or trauma. The defendant concedes that, if, for example, the claimant's skin had been *punctured* by a syringe containing blood contaminated with HIV, that puncture would be sufficient to constitute an injury. The defendant contends, however, that, in the absence of similar trauma, the claimant cannot recover under the act.

The defendant's argument cannot be reconciled with the undisputed facts in this case. The parties have stipulated that the claimant's contacts with the contagious suspects were sufficient to constitute "exposures." The defendant, therefore, cannot be arguing that the contacts were not sufficiently serious to create a risk of infection.[9] The defendant must be arguing, instead, that the claimant did not suffer an "injury" because the incidents giving rise to his exposures did not leave a mark, abrasion or other outward sign not already present. The defendant, in effect, invites us to exalt the form of the claimant's contact with the infected suspects over the substance of the claimed injury. We decline this invitation. For purposes of workers' compensation law, the injury suffered by the claimant is the *exposure* to potentially fatal contagious diseases. That injury is no less real or cognizable because it was not attended by puncture or abrasion.[10] See *Arkansas Dept. of Correc-*

---

of workers' compensation law, we note that the factors it embraces are demonstrated in the undisputed facts of this case.

[9] Accordingly, we express no opinion on the degree or duration of contact with infectious disease that is sufficient to constitute an "exposure" for purposes of workers' compensation law.

[10] At oral argument before this court, the defendant attempted for the first time to draw a distinction between the review board's authority to compel the defendant to pay for the claimant's medical bills and its authority to compel the defendant to enter into a voluntary agreement with the claimant. According to the defendant, the claimant's exposures constituted nothing more than "compensable events," and, therefore, triggered only the review board's power to award medical compensation and not its power to order a voluntary agreement. This argument and the distinctions upon which it relies are, to our knowledge, entirely unsupported by either statute or case law. It is, however, unnecessary for us to address these deficiencies in light

*tion* v. *Holybee*, 46 Ark. App. 232, 235, 878 S.W.2d 420 (1994) (in case involving correction officer bitten by HIV positive inmate, claimant's injury was not merely bite wound but also risk of infection); *Jackson Township Volunteer Fire Co.* v. *Workmen's Compensation Appeal Board (Wallet)*, supra, 594 A.2d 828 (in case involving ambulance attendant who came into contact with HIV contaminated blood, claimant's "injury was the risk of infection").

Second, the defendant contends that the claimant has not suffered a compensable injury because he has not, as yet, been incapacitated or suffered any loss of income. To the extent that this argument relies on dicta in *Mulligan* v. *F. S. Electric*, 231 Conn. 529, 541, 651 A.2d 254 (1994), and cases cited therein for the proposition that " '[c]ompensation under [the act] is based upon incapacity . . . [and] loss of earning power,' " that dicta has been disavowed. *Williams* v. *Best Cleaners, Inc.*, 237 Conn. 490, 492–93, 677 A.2d 1356 (1996). To the extent that this argument is based on the provisions of General Statutes § 31-295 (a), which provide that no compensation for total or partial *disability* shall be payable under the act until the injured employee misses more than three days of employment, those provisions are irrelevant to the present case. The claimant does not seek disability compensation. He seeks, rather, to recover medical expenses in connection with the testing and treatment for HIV and tuberculosis exposure. Pursuant to § 31-294d, he is entitled to these medical expenses without any showing of incapacity or disability. See also *Coca Cola Bottling Co.* v. *Superior Court*, 233 Cal. App. 3d 1273, 1284, 286 Cal. Rptr. 855 (1991) ("a compensable injury is one which causes disability or need for medical treatments"); *Elliott* v. *Dugger*,

---

of the defendant's concession that, if we conclude the claimant's exposures constituted "injuries" within the scope of the act, the review board had the authority to order the parties to enter into a voluntary agreement.

579 So. 2d 827, 830 (Fla. App. 1991) ("[t]he fact that [workers' compensation claimant] has yet to suffer any proven disability . . . as a result of his exposure to [acquired immune deficiency syndrome] does not make his injury any less compensable").[11]

Accordingly, in light of the undisputed factual circumstances of record, we conclude that the claimant has established, as a matter of law, that his exposures to two potentially fatal infectious diseases are compensable "injuries" under the act. Accordingly, the commissioner and the review board improperly denied him the right to recover for reasonable expenses that he incurred for medically appropriate testing and treatment.

The judgment is reversed and the case is remanded to the review board with direction to remand it to the commissioner for further proceedings according to law.

In this opinion the other justices concurred.

---

[11] The defendant also calls our attention to federal cases in which an exposed employee has brought an action for emotional distress and medical monitoring costs under the Federal Employers Liability Act. See, e.g., *Buckley* v. *Metro-North Commuter R. Co.*, 79 F.3d 1337 (2d Cir. 1996). Subsequent to oral argument in this case, the Circuit Court's decision in *Buckley* was overturned by the United States Supreme Court, which held that the employee could not maintain such an action under that federal act in the absence of pathological manifestations. *Metro-North Commuter R. Co.* v. *Buckley*, 521 U.S. 424, 117 S. Ct. 2113, 2117, 138 L. Ed. 2d 560 (1997). Because the *Buckley* case arose in the context of a federal statute that is closely tied to traditional tort principles, it does not constrain our independent analysis of Connecticut workers' compensation law.