JAMES SCHIANO *v.* BLISS EXTERMINATING COMPANY ET AL.
(AC 18358)

Lavery, Zarella and Dupont, Js.[1]

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 12—officially released April 25, 2000

*Richard G. Kascak, Jr,* with whom, on the brief, were *Andrew P. Dwyer II* and *Serge G. Mihaly,* for the appellant (plaintiff).

*Richard Reeves Hine,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellee (defendant second injury fund).

*Opinion*

LAVERY, J. The plaintiff, James Schiano, appeals from the decision of the workers' compensation review board (board) affirming the decision of the workers' compensation commissioner (commissioner) with respect to the plaintiff's third party settlement. On

appeal, the plaintiff claims that the board improperly concluded (1) that the commissioner had jurisdiction to determine the effect settlement of a third party civil action had on his compensation benefits, (2) that the commissioner had found properly (a) that no portion of the third party settlement was attributable to his wife's loss of consortium claim, (b) that there was an agreed upon moratorium and (c) the benefits to which the moratorium applied, and (3) that the defendant second injury fund (fund) is entitled to a credit from the third party settlement. We affirm the decision of the board.

The following facts are relevant to this appeal. On February 25, 1986, the plaintiff sustained a compensable, work-related lower back injury while he was employed by the named defendant, Bliss Exterminating Company (employer). The employer and the plaintiff agreed on a base compensation rate, and the commissioner approved the agreement on June 6, 1986. The plaintiff's claim was transferred to the fund in April, 1988. In April, 1989, the commissioner approved a voluntary agreement between the plaintiff and his employer that the plaintiff had a 50 percent permanent partial disability of his lower back, which entitled him to 260 weeks of compensation. In April, 1989, two separate commutations of thirty weeks each were applied to the end of the plaintiff's specific compensation award.

Prior to August, 1988, the plaintiff and his wife commenced a civil action against a third party, claiming that the plaintiff's work-related injury and his wife's loss of consortium were proximately caused by the third party's negligence. The employer and the fund intervened as party plaintiffs in the civil action,[2] pursu-

---

[2] The employer had a claim of approximately $62,358 against the plaintiff's recovery, and the fund had a claim of approximately $100,000. The third party's liability was questionable, and the limit of his insurance policy was less than the total of the liens.

ant to General Statutes (Rev. to 1985) §§ 31-293[3] and 31-352.[4] The plaintiff and his wife settled the third party action for $70,000. According to the agreement of the parties, the plaintiff, the employer and the fund all received a portion of the settlement after expenses and attorney's fees were paid. The plaintiff and his wife received $30,000. The plaintiff and the fund agreed that there would be a $30,000 moratorium on the plaintiff's compensation from the fund, but at the time of the

---

[3] General Statutes (Rev. to 1985) § 31-293 provides in relevant part: "When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages . . . the injured employee . . . may proceed at law against such person to recover damages for such injury; and any employer having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such other person to recover any amount that he has paid or has become obligated to pay as compensation to such injured employee. If either such employee or such employer brings such action against such third person, he shall forthwith notify the other . . . and such other may join as a party plaintiff in such action . . . . If such employer and employee join as parties . . . and any damages are recovered, *such damages shall be so apportioned that the claim of the employer . . . shall take precedence over that of the injured employee in the proceeds of such recovery,* after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting such recovery. The rendition of a judgment in favor of the employee or the employer against such party shall not terminate the employer's obligation *to make further compensation, including medical expenses, which the compensation commissioner thereafter deems payable to such injured employee. If the damages, after deducting the employee's expenses . . . are more than sufficient to reimburse the employer, damages shall be assessed in his favor in a sum sufficient to reimburse him for his claim, and the excess shall be assessed in favor of the injured employee. . . .* For the purposes of this section the employer's claim shall consist of (1) the amount of any compensation which he has paid on account of the injury which is the subject of the suit and (2) *an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of such injury. . . .*" (Emphasis added.)

[4] General Statutes (Rev. to 1985) § 31-352 provides: "The provisions of section 31-293 shall apply to any [payments from the second injury fund] and the treasurer is authorized to bring an action, or join in an action as provided by said section, when he has paid, or by award has become obligated to pay, compensation out of the fund."

agreement, the fund was unaware that the plaintiff was temporarily totally disabled. The settlement agreement was not presented to the commissioner for approval and did not come to his attention until the plaintiff sought additional compensation.

On November 15, 1991, following a three day hearing, the commissioner rendered written findings and an award, concluding in part that the effect of the moratorium, if any, had not been sufficiently addressed at the hearing and that a further hearing was required. Following an additional hearing and receipt of briefs, the commissioner determined that the plaintiff and the fund had agreed to a moratorium that "was in lieu of 108 weeks of specific disability benefits, which would not be paid but deducted from any unpaid specific disability benefits."[5]

The plaintiff appealed to the board from the commissioner's decision regarding the effect of the moratorium. The board rendered a decision in December, 1994, concluding that the commissioner had properly interpreted the effect of the moratorium pursuant to § 31-293 and *Enquist* v. *General Datacom*, 218 Conn. 19, 587 A.2d 1029 (1991). The board also concluded, however, that the commissioner had improperly applied the entire $30,000 settlement to the moratorium because he made no finding as to how much of the settlement was paid in satisfaction of the wife's loss of consortium claim. The board remanded the matter to the commissioner to make that determination.[6] Pursuant to the remand, the commissioner held an additional hearing and determined that no portion of the $30,000 settlement was attributable to the wife's loss of consortium claim.

[5] A further hearing would be required to determine the amount of the benefits paid.

[6] The plaintiff then appealed to this court, but the appeal was dismissed for lack of a final judgment.

The plaintiff appealed to the board, which affirmed the commissioner's findings and award in an opinion rendered in April, 1998. The plaintiff appealed to this court from the board's 1994 decision concerning the moratorium and its effect, and from its 1998 decisions concerning the loss of consortium claim.

We note the standard of review applicable to workers' compensation appeals. "The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . *Besade* v. *Interstate Security Services*, 212 Conn. 441, 449, 562 A.2d 1086 (1989). Neither the review board nor this court has the power to retry facts. See *Six* v. *Thomas O'Connor & Co.*, 235 Conn. 790, 798–99, 669 A.2d 1214 (1996). . . . *Doe* v. *Stamford*, 241 Conn. 692, 696–97, 699 A.2d 52 (1997). It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny. . . . *Duni* v. *United Technologies Corp.*, 239 Conn. 19, 24–25, 682 A.2d 99 (1996); *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). Where . . . [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision. *Doe* v. *Stamford*, supra, 697; see *Davis* v. *Norwich*, supra, 317. . . . *Dowling* v. *Slotnik*, 244 Conn. 781, 798, 712 A.2d 396, [cert. denied sub nom. *Slotnik* v. *Considine*,] 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998)." (Internal quotation marks

omitted.) *Fimiani* v. *Star Gallo Distributors, Inc.*, 248 Conn. 635, 641–42, 729 A.2d 212 (1999). Our Supreme Court has previously construed § 31-293 to facts similar to the ones now before this court. See *Love* v. *J. P. Stevens & Co.*, 218 Conn. 46, 587 A.2d 1042 (1991); *Enquist* v. *General Datacom*, supra, 218 Conn. 19.

I

The plaintiff claims that the board improperly determined that the commissioner had jurisdiction to interpret the effect the settlement of his third party litigation had on his compensation benefits. More specifically, the plaintiff claims that a commissioner's authority is defined by statute and does not extend to matters litigated in the Superior Court, to contractual agreements between the plaintiff and a third party or to his wife's loss of consortium claim. We disagree.

The powers and duties of a commissioner are set forth in General Statutes § 31-278, which provides in part: "Each commissioner shall, for the purposes of this chapter, have power to summon and examine under oath such witnesses, and may direct the production of, and examine or cause to be produced or examined, such books, records, vouchers, memoranda, documents, letters, contracts or other papers in relation to any matter at issue as he may find proper . . . ." See also *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 444–45, 705 A.2d 1012 (1997).

Section 31-293 permits an injured employee to receive workers' compensation benefits for work-related injuries and to bring a third party cause of action against a person who may be legally liable for the employee's injuries. If the employee brings a civil action against a third party, the employer, its insurance carrier and the fund may intervene in the action if they have paid or have become obligated to pay compensation to the employee.

The question of whether a commissioner has jurisdiction to determine the award and credits, including third party settlements, made pursuant to our workers' compensation scheme was previously determined in the affirmative by our Supreme Court in *Love* v. *J. P. Stevens & Co.*, supra, 218 Conn. 46. In *Love*, our Supreme Court disagreed with the plaintiff's position "that even if an employer is entitled to a credit to the extent of a third party recovery, such credit must be established by the court and not by the workers' compensation commissioner because § 31-293 . . . does not expressly permit the workers' compensation commissioner to establish the amount of the credit"; id., 50; and "that it is beyond the authority of the commissioner to make apportionments for future benefits after the third party action is over." Id. The Supreme Court held to the contrary that "the commissioner has the responsibility to calculate the credit for unknown future benefits, [and that] the [Workers' Compensation Act, General Statutes § 31-275 et seq.,] in general, delegates this responsibility to the commissioner . . . ." *Love* v. *J. P. Stevens & Co.*, supra, 50–51.

In this case, pursuant to §§ 31-278, 31-293 and 31-352, the commissioner had not only the authority but also the responsibility to review the third party settlement to determine how to resolve the fund's claim and the settlement's effect on future compensation benefits to which the plaintiff was entitled. To fulfill his responsibility, the commissioner had to know the value of the plaintiff's portion of the settlement and the terms to which the plaintiff and the fund had agreed. Section 31-278 permits the commissioner to conduct a hearing to gather the facts necessary to make his decision.

The plaintiff also argues that even if the commissioner had jurisdiction over his claim against the third party, the commissioner lacked jurisdiction over the plaintiff's wife's loss of consortium claim. Although it is true that a commissioner may not dictate the terms or the amount of a loss of consortium claim, in this

instance it was necessary for the commissioner to know the amount of the settlement paid in satisfaction of the wife's claim to determine the amount of the plaintiff's recovery.[7] In making the determination, the commissioner did not assume jurisdiction over or affect the wife's rights with respect to the third party. The commissioner merely used the information to allocate the plaintiff's portion of the settlement to the moratorium.

## II

The plaintiff also claims that the board improperly affirmed several factual conclusions made by the commissioner, e.g., (1) that no portion of the third party settlement was paid in satisfaction of the wife's loss of consortium claim, (2) that there was an agreed upon moratorium and (3) the benefits to which the moratorium applies. We disagree.

"We will not review the facts as found by the commissioner. Our role is to determine whether the review [board's] decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. *Adzima* v. *UAC/Norden Division*, 177 Conn. 107, 118, 411 A.2d 924 (1979); *Luddie* v. *Foremost Ins. Co.*, 5 Conn. App. 193, 196, 497 A.2d 435 (1985)." (Internal quotation marks omitted.) *Aurora* v. *Miami Plumbing & Heating, Inc.*, 6 Conn. App. 45, 47, 502 A.2d 952 (1986).

"[T]he power and duty of determining the facts rests on the commissioner, who is the trier of fact. *Fair* v.

---

[7] The plaintiff's third party claim and his wife's loss of consortium claim are inseparable. Any loss of consortium claim is derivative of the injured spouse's cause of action. See *Jacoby* v. *Brinckerhoff*, 250 Conn. 86, 92, 735 A.2d 347 (1999); *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 287, 627 A.2d 1288 (1993); *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 563–64, 562 A.2d 1100 (1989); *Izzo* v. *Colonial Penn Ins. Co.*, 203 Conn. 305, 312, 524 A.2d 641 (1987); *Ladd* v. *Douglas Trucking Co.*, 203 Conn. 187, 195, 523 A.2d 1301 (1987); *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 494, 408 A.2d 260 (1979).

*People's Savings Bank*, 207 Conn. 535, 539 [542 A.2d 1118] (1988), citing *Czeplicki* v. *Fafnir Bearing Co.*, 137 Conn. 454, 457 [78 A.2d 339] (1951). This authority to find the facts entitles the commissioner to determine the weight of the evidence presented and the credibility of the testimony offered by lay and expert witnesses. *Tovish* v. *Gerber Electronics*, 32 Conn. App. 595, 599 [630 A.2d 136] (1993), appeal dismissed, 229 Conn. 587 [642 A.2d 721] (1994)." *Funaioli* v. *New London*, 52 Conn. App. 194, 197, 726 A.2d 626 (1999).

## A

The plaintiff takes issue with the board's affirmance of the commissioner's finding that no portion of the $30,000 settlement was paid in satisfaction of his wife's loss of consortium claim. In its April 8, 1998 opinion, the board noted that the commissioner cited the testimony of two attorneys as well as letters exchanged between counsel to support his decision that no portion of the $30,000 was paid to settle the wife's claim. "[T]he power and duty of determining the facts rests on the commissioner, the trier of facts." (Internal quotation marks omitted.) *Kolomiets* v. *Syncor International Corp.*, 51 Conn. App. 523, 526, 723 A.2d 1161 (1999), aff'd, 252 Conn. 261, 746 A.2d 743 (2000). It is not this court's duty to second-guess the commissioner or the board. On the basis of our review of the record,[8] we

[8] The commissioner made the following relevant findings:

"11. At the time the third party claim was settled, the [plaintiff] and his wife were represented by attorney John F. X. Androski.

"12. Attorney Androski testified that he had discussed the value of the loss of consortium claim with the [plaintiff] and his wife. He stated he believed the loss of consortium claim to be worth 1/3 to 1/2 half of the total settlement.

"13. Attorney Androski's letter of November 15, 1989 to attorney Diane Duhamel, assistant attorney general and the representative of the second injury fund, spells out the terms of the settlement and the moratorium with respect to the net $30,000 the [plaintiff] received. There is no mention of any loss of consortium claim in the document. ([Second injury fund's] exhibit two).

"14. Attorney Androski's letter to attorney Duhamel dated February 5,

conclude that the board properly affirmed the commissioner's decision.

### B

The plaintiff also claims that the board improperly affirmed the commissioner's conclusion that there was an agreed upon moratorium because there was no meeting of the minds. In its December 7, 1994 opinion, the board concluded that the commissioner properly relied on the testimony of the plaintiff's attorney, who "understood that the fund was proposing a credit rather than a mere postponement of benefits, and that this credit would be taken against whatever benefits were currently being paid, i.e., permanent partial disability benefits." The board cited *Fair* v. *People's Savings Bank*, supra, 207 Conn. 539–41, as authority for its position. We have reviewed the record[9] and concur with the board's conclusion.

---

1990, makes no mention of any division of apportionment of the settlement proceeds for the loss of consortium claim. ([Second injury fund's] exhibit four).

"15. Attorney Duhamel testified that she did not recall any conversations with attorney Androski or attorney Douglas Drayton, the attorney representing Aetna [Life and Casualty], the employer's insurance carrier, regarding the dividing up or setting aside any money for the loss of consortium claim.

"16. Attorney Duhamel's testimony is supported by her letters of December 14, 1989, and February 27, 1990, to attorney Androski. ([Second injury fund's] exhibits three and five).

"17. The general release resolving the third party claim does not have any mention of a division for the loss of consortium. However, it includes a paragraph stating 'more particularly for injuries sustained by [the plaintiff] when he slipped and fell on the premises on February 26, 1986.' ([Plaintiff's] exhibit E).

"18. It is the [plaintiff's] contention that $29,166.67 is the portion of the settlement which is to be credited towards his wife's claim of loss of consortium."

[9] In his September 16, 1993 opinion, the commissioner made the following findings:

"28. The present proceedings were commenced by the [plaintiff's] request for temporary total disability benefits.

"29. The commissioner issued a findings and award on November 15, 1991, which found in part that the [plaintiff] had become totally disabled on October 15, 1989.

## III

In his final claim, the plaintiff argues that the commissioner and the board improperly applied our Supreme Court's ruling in *Enquist* v. *General Datacom,* supra, 218 Conn. 19, by applying the fund's portion of the settlement as a credit. We do not agree.

The essence of the plaintiff's claim is a factual distinction between *Enquist* and this case. In *Enquist,* the plaintiff's third party settlement was in excess of the fund's lien. Here, the third party settlement was insufficient to satisfy the claims of the employer or the fund. This is a distinction without a difference with respect to the application of § 31-293, as the operative language

"30. The [plaintiff] would be entitled to such benefits but for the fund's claim of a 'moratorium,' which it asserts is an absolute credit against any claim for permanent partial disability or temporary total disability benefits accruing or payable after the aforesaid settlement.

"31. It appears that the attorney for the [plaintiff] and the attorney for the second injury fund were not in agreement in their understanding surrounding the stipulation of the third party case.

"32. By letter dated November 15, 1989, (exhibit FF) to the second injury fund, the [plaintiff's] attorney sets forth that the 'moratorium' was to be applied to 108 weeks of specific disability benefits, which total approximately $30,000.00. IT IS FOUND.

"33. On December 14, 1989, (exhibit KK) the second injury fund forwarded a letter to the [plaintiff's] attorney, including a release of the third party claim. Said letter recites that the fund would have a $30,000.00 moratorium on the [plaintiff's] workers' compensation benefits.

"34. Said exhibit KK does not describe the type of benefits to which it would apply. It does not address a disagreement with the [plaintiff's] understanding that the moratorium would apply only to specific disability benefits.

"35. UPON REVIEW OF ALL THE EVIDENCE BEFORE ME, I AM SATISFIED, CONCLUDE AND FIND that there was a 'moratorium' agreement between the [plaintiff] and the second injury fund; however, there is a disagreement toward which benefits the moratorium would apply at this time.

"36. IT IS FURTHER FOUND that the agreed moratorium would apply to specific disability benefits for 108 weeks.

"37. IT IS FURTHER FOUND that at the time of the moratorium discussions, at least one of the parties was not aware that the [plaintiff] was temporarily totally disabled."

of the statute provides: "If such employer and employee join as parties plaintiff in such action and any damages are recovered, *such damages shall be so apportioned that the claim of the employer*, as defined in this section, *shall take precedence over that of the injured employee in the proceeds of such recovery* . . . ." (Emphasis added.) General Statutes (Rev. to 1985) § 31-293.[10]

In *Enquist*, the plaintiff sought to distinguish his claim from *Rosenbaum* v. *Hartford News Co.*, 92 Conn. 398, 400–401, 103 A. 120 (1918), and a subsequent statutory amendment by focusing on known and unknown future obligations of the employer. Our Supreme Court held that an employer is entitled to a credit against future workers' compensation benefits in an amount equal to the employee's net recovery from a personal injury claim made against a third party tortfeasor, noting that the statute provides for the employer's claim to take precedence over the injured employee's claim for the net proceeds of the recovery. *Enquist* v. *General Datacom*, supra, 218 Conn. 23. "[O]ur conclusion that an employer is entitled to a credit for unknown future benefits against the net proceeds of a third party recovery comports with other well established principles of workers' compensation law. One of the purposes of the workers' compensation statute is 'the avoidance of two independent compensations for the injury'; *Uva* v. *Alonzy*, 116 Conn. 91, 98, 163 A. 612 (1933); a proposition that [our Supreme Court] recently reaffirmed. See *Paternostro* v. *Edward Coon Co.*, 217 Conn. 42, 47–49, 583 A.2d 1293 (1991). If the plaintiff's argument were to prevail, a claim made subsequent to the disposition of a third party action would result in the employee receiving compensation from both the third party wrongdoer and the employer. In the absence of explicit statutory language mandating such a result, we decline

---

[10] Essentially, the fund stands in the shoes of the employer. See *Casey* v. *Northeast Utilities*, 249 Conn. 365, 377, 731 A.2d 294 (1999).

to adopt such a construction." *Enquist* v. *General Datacom,* supra, 26.

The language of the statute is clear; the employer's claim takes precedence over the claim of the injured employee in an action against a tortfeasor. Here, the fund had a claim of approximately $100,000 on the proceeds of the third party action. The third party's liability was questionable, and the suit was settled for $70,000. The fund received only $10,000 from the settlement. The employer and the fund permitted the plaintiff to take $30,000 of the settlement although by statute, they were entitled to the entire sum. At the time, the fund did not know that the plaintiff was receiving temporary total disability benefits. By permitting the plaintiff to take a lump sum when the case settled and agreeing to a moratorium, the fund allowed the plaintiff to have $30,000 immediately rather than waiting until specific benefit payments became due. The decision of the board comports with § 31-293 and the public policy against double recovery. See *Gurliacci* v. *Mayer,* 218 Conn. 531, 570, 590 A.2d 914 (1991).

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.